[No. 12534. Department Two. February 17, 1916.]

JAMES BEASTON et al., *Respondents*, v. PORTLAND TRUST & SAVINGS BANK, *Intervener and Appellant*, PAYETTE TIMBER & MILLING COMPANY, LIMITED, *Defendant*, W. S. T. DERR, *as Clerk of the Superior Court for Clarke County, Garnishee.*[1]

WITNESSES—TRANSACTION WITH PERSON SINCE DECEASED—CORPORATION AS PARTY—DECEASED OFFICER. Rem. & Bal. Code, § 1211, excluding the evidence of a party in interest or to the record in his own behalf as to any transaction had by him with a person since deceased, where the adverse party sues or defends as legal representative of such deceased person, does not exclude evidence of transactions had with a stockholder and officer, since deceased, of a corporation which was the adverse party.

SAME—DEPOSITION TAKEN BEFORE DEATH. A deposition as to transactions with an adverse party who died after the deposition was taken but before the trial, is not inadmissible as evidence of a transaction had with a party since deceased, within Rem. & Bal. Code, § 1211; since the evidence was competent at the time the witness testified.

DEPOSITS—SPECIAL DEPOSITS—TITLE. Where defendant, in an action to foreclose logger's liens, procured the release of the logs pending the trial by inducing a bank to make a deposit of a check with the clerk of court pursuant to Rem. & Bal. Code, § 1173, upon the representation that it had a good defense to the action and would return the check to the bank unless it was necessary for the payment of the lien judgments, the deposit was a special one, and not a loan, and did not vest the defendant with any title to the money upon its obtaining judgment defeating the liens.

GARNISHMENT—MONEY SUBJECT—SPECIAL DEPOSIT. A special deposit, made by a bank to enable defendant in a lien foreclosure to

[1]Reported in 155 Pac. 162.

procure a release of the logs, is not subject to garnishment by judgment creditors of the defendant, after dismissal of the foreclosure suit, where the defendant had no title to the money.

Appeal from a judgment of the superior court for Clarke county, Holcomb, J., entered August 10, 1914, upon findings in favor of the plaintiffs, in garnishment proceedings, tried to the court. Reversed.

*Huntington & Wilson*, for appellant.

*McMaster, Hall & Drowley*, for respondents.

FULLERTON, J.—In the early part of the year 1912, an action was brought by T. C. Stearns and others, as plaintiffs, against the Payette Timber & Milling Company, to foreclose loggers' liens filed by the plaintiffs upon certain logs and timber products owned by the milling company. At the commencement of the action, the court appointed the sheriff of the county wherein the liens were filed as receiver of the property, and possession of the property was duly taken by the sheriff pursuant to such appointment. After the seizure of the property by the sheriff, the milling company sought to secure its release prior to the determination of the question whether the liens of the plaintiffs were valid and subsisting liens thereon, a question on which it had taken issue in the foreclosure action. Pursuant to that purpose, it procured the Portland Trust & Savings Bank to issue its cashier's check, payable to the sheriff holding the property, in an amount equal to the claims sued upon, together with one hundred dollars additional to cover costs and interest. The statute (Rem. & Bal. Code, § 1173; P. C. 309 § 35) required that the deposit to secure the release of the property be made with the clerk of the court, and the sheriff, after indorsing the check, caused it to be so deposited, whereupon the property was released to the milling company. The clerk, however, did not hold the check, but caused it to be cashed and held the money in its stead. Later on, the issue between

the lien claimants and the milling company was tried out and resulted in a judgment in favor of the milling company, which was duly entered on June 17, 1912.

On January 24, 1912, the respondents in the present action recovered a judgment against the milling company for $1,625. Subsequent to the deposit of the money with the clerk in the first action mentioned, but prior to the termination of that action, the respondents caused a writ of garnishment to be issued and served upon the clerk, garnishing all moneys in his possession belonging to the milling company. On September 16, 1912, after the final termination of the lien case and the time limited to appeal therefrom had expired, the judgment creditors caused an execution to issue on the judgment and a second writ of garnishment to be issued and served upon the clerk. In the meantime, the bank named had served a notice upon the clerk to the effect that the money deposited with him in the lien foreclosure proceedings was the money of the bank, and that the bank would look to him for the return of the money, if not applied to the purposes for which it was deposited. The clerk made answer to the garnishment proceedings, setting up the adverse claim made to the money by the bank. The bank also obtained leave of court and filed a complaint of intervention in the proceedings, in which it set up its claim to the money. An answer was filed to the complaint, and on the issues thus framed, the rights of the parties to the money was tried. Judgment was entered against the bank and in favor of the garnishees, and from this judgment, the present appeal is prosecuted.

As a preliminary question, it is necessary to notice an objection made by the respondents to the admissibility of certain evidence offered by the appellant. In the negotiations leading up to the deposit of the money with the clerk of the court, the bank was represented by one Olmstead, its then vice president and manager, and the milling company by one Brainard, its president; each of these persons being at the

time a stockholder in the corporation which he represented. Prior to the trial of the garnishment proceedings, the deposition of Olmstead was taken for use at that trial, as to the understanding had between Brainard and himself concerning the deposit of the money. Between the date of the taking of the deposition and the date of the trial, Brainard died, and when the deposition was offered in evidence, it was objected to on the ground that the witness was incompetent to testify, because of the statute relating to the competency of witnesses when the adverse party sues or defends as the representative of, or as deriving right or title from or through, a deceased person. The trial court admitted the deposition, the respondents claim erroneously, and they urge in this court that it must be rejected here, since this court tries the action *de novo* and must try it upon the competent evidence in the record only. The statute relied upon to exclude the evidence is found at Rem. & Bal. Code, § 1211 (P. C. 81 § 1027). The portion thereof material to the question reads as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise; but such interest may be shown to affect his credibility: Provided, however, that in an action or proceeding where the adverse party sues or defends as executor, administrator, or legal representative of any deceased person, or as deriving right or title by, through, or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record shall not be admitted to testify in his own behalf as to any transaction had by him with or any statement made to him by any such deceased or insane person, or by any such minor under the age of fourteen years."

The respondents do not, of course, claim that they are suing or defending as executor or administrator, or as the legal representative of any deceased person, but claim, as we understand them, that they defend as deriving right through

and from a corporation in which Brainard had an interest; the argument being that, since Brainard was, at the time of making the contract, a stockholder in and president of the milling company, he had a personal interest in the property of that company, and since the claim of the appellant bank to the money in the hands of the clerk affects that property, it affects such interest as Brainard had in the corporation, and to permit Olmstead to testify is to permit a party in interest to testify on his own behalf to a transaction had by him with a deceased person where the adverse party claims by or through such person. But we are constrained to the belief that the contention is not well founded. There are cases which maintain the rule that a stockholder has such an interest in a corporation as to disqualify him from testifying in behalf of the corporation in an action against the representatives of a deceased person, and cases, also, which maintain the converse of the rule, namely, that if the parties be living, one of them will not be permitted to testify to transactions with the other if the agent of that other, who conducted the transactions, be dead.

This latter rule may support the contention of the respondents, but we think the cases upon which it is founded, for the greater part at least, rest upon statutes which can be differentiated from our own, and that they are contrary to the general trend of the cases even upon like statutes. Our statute, it will be observed, applies, in its terms, only in the case of the death of a natural person who is a principal in the contract. It makes no reference to corporations, or to agents of corporations, or even to agents of deceased natural persons, and to read into it this further exception would be, we believe, an unwarranted extension of its terms. The cases cited from other jurisdictions, we shall not review. As we say, they are conflicting. Of the two cases cited from this court, the first is *Gilmore v. Baker Co.*, 12 Wash. 468, 41 Pac. 124. But a careful reading of the case will show that the exclusion of the evidence there offered was rested

upon different principles from that contended for here; the court expressly saying, that it did "not feel called upon to pass on the question of whether an officer of a corporation can be permitted to testify to a transaction with a deceased person, in a suit between such corporation and the representative of such deceased person." The other case is *Thorne v. Joy*, 15 Wash. 83, 45 Pac. 642. In this case the witness excluded stood in the relation of a mortgagee to the property in dispute, which would be affected by the result of the action. Plainly the case is not in point on the question here involved.

We think, further, that the deposition was admissible under the rule of the case of *Neis v. Farquharson*, 9 Wash. 508, 37 Pac. 697. In that case we held that the death of a party to an action and the substitution of his legal representative, subsequent to the commencement of the action, did not render inadmissible in evidence the deposition of an adverse party in interest, when, at the time such deposition was taken, the witness was competent. This, on the principle that the witness testified when his deposition was taken, not when it was offered to be read in evidence. Such were the facts in the case before us. At the time the deposition of Olmstead was taken, all of the parties to the transaction were alive, and his evidence was then clearly competent, and the statute, to use the language of Judge Anders, "makes the time of testifying the test of competency, rather than the time of the hearing."

Treating the deposition of Olmstead as properly in the record, we think the trial court reached an erroneous conclusion on the facts. Olmstead's testimony makes it clear that the bank did not intend to make a loan of the money to the milling company, or otherwise vest it with title or ownership therein. While the witness realized that the money would be applied to the satisfaction of the claims of the plaintiffs in the lien foreclosure action, should they succeed in establishing their liens, he was led to infer from the state-

ments of Brainard that there were well grounded reasons for believing that they would not be so successful, and that the money would be returned to the bank within a short time. He also testified that it was understood between himself and Brainard that the check would not be cashed unless necessary for the payment of a judgment obtained by the lien claimants, but would, if not cashed for that purpose, be returned to the bank in its original form. His statements, it seems to us, are supported by the fact that the check was not made payable to Brainard nor the milling company, nor to any one for the milling company, but to the officer who had seized the property. It is true a note was taken from the milling company for the amount of the check, but this the witness explains was a convenient method of keeping an account of the transaction and to represent the obligation in case the proceeds of the check were applied on the liability it was given to indemnify. But, without pursuing the inquiry further, we think it clear that the money was deposited for a special purpose, without intent on the part of the depositor to part with title unless necessary to be used for that special purpose. Were the contract, therefore, between the milling company and the bank, the milling company could not retain the money. The judgment debtors of the milling company by garnishing the money acquired no greater rights in the money than the milling company itself possessed, and, since the latter had no rights, the garnisheeing creditors acquired none. *Bellingham Bay Boom Co. v. Brisbois*, 14 Wash. 173, 44 Pac. 153, 46 Pac. 238; *Merwin v. Fowler*, 20 Wash. 587, 56 Pac. 374; *McAlmond v. Bevington*, 23 Wash. 315, 63 Pac. 251, 53 L. R. A. 597. The judgment is reversed, and the cause remanded with instructions to enter a judgment for the appellant intervener.

MORRIS, C. J., ELLIS, and CHADWICK, JJ., concur.