[No. 10785-0-III. Division Three. October 10, 1991.]

GENEITA H. THOR, ET AL, *Respondents*, v. BLANCHE H. MCDEARMID, ET AL, *Appellants*, ROSE ANNE RAYMOND, ET AL, *Respondents*.

*Joseph Meagher* and *Meagher & French*, for appellants.

*Patrick J. Morrissey* and *Morrissey & Sloan*, for respondents.

THOMPSON, J. — Blanche McDearmid appeals a judgment partitioning 1,280 acres of land and granting nonexclusive

easements over existing roadways for the benefit of each parcel. We remand for further proceedings as to the extent and location of easements, but affirm in all other respects.

James E. Hamilton, Rosa Hamilton and J.E. Hamilton & Sons, Inc., acquired title to approximately 1,280 acres of land in Okanogan County in the 1920's and 1930's. In 1937 and 1941, James E. Hamilton and J.E. Hamilton & Sons, Inc., executed deeds transferring their interests in the land to Rosa Hamilton, wife of James E. Hamilton. Rosa Hamilton died intestate on July 5, 1943. At the time of her death, she had two surviving sons, Purley and Durley, and two surviving daughters, Blanche Hamilton (McDearmid) and Nevrene Straub.

Blanche Hamilton (McDearmid) and Durley Hamilton successfully petitioned for appointment as joint administrators of their mother's estate. They filed an inventory and appraisement which included a legal description of the 1,280 acres in Okanogan County. A final accounting and petition for distribution was filed in February 1944, in which the joint administrators requested equal distribution of the estate to the four surviving children.

A warranty deed was executed by Nevrene (Straub) Ranes in 1963 in which she transferred to Blanche McDearmid what was described in the deed as her "full and undivided one quarter (¼) interest" in the Okanogan County land for a recited sum of $4,500. Nevrene Ranes reserved all mineral rights. In 1968, Purley Hamilton executed a deed purporting to transfer his "undivided one quarter interest as a tenant in common" to a daughter, Rose Anne Raymond (Olsen).[1]

A chart depicting the heirs of Rosa and James E. Hamilton is provided to illustrate the relationship among those claiming an interest in the Okanogan County land:

---

[1] Purley Hamilton died after this lawsuit was commenced. The trial court found, without deciding, that the deed to his daughter may have been ineffective as an attempted testamentary disposition. Counsel stipulated and the court agreed that any disposition as to his interest would be in the name of Rose Anne Olsen as executrix of the estate of Purley Hamilton, and the effectiveness of the deed would be subject to his probate proceedings.

ROSA E. AND JAMES E. HAMILTON

*The surviving heirs claiming an interest in the land at the time of trial are shown by asterisk and bold-face print. Janice Peterson's claim is limited to mineral rights.

None of Rosa Hamilton's children or their heirs resided on the land, although they did use it from time to time for recreational and other purposes. The land was sometimes leased for cattle grazing by Blanche McDearmid. Ms. McDearmid paid real property taxes for the years 1942 through 1974, 1978, and 1980 through 1985.[2] The estate of Ethna Mae Hamilton paid taxes for 1975 through 1977 and the Purley Hamilton estate paid taxes for 1979.

Geneita Thor and Durlene Mae Hamilton commenced this partition action, each claiming an interest as tenant in

---

[2]Blanche McDearmid may also have paid real property taxes on the land prior to 1942. Records indicating who paid taxes prior to 1942 were not available.

common with Blanche McDearmid and Purley Hamilton or his heirs. Ms. McDearmid counterclaimed, alleging ownership of all acreage based on a resulting or constructive trust or, alternatively, by adverse possession as to her cotenants.

The trial court determined the parties owned the land as tenants in common and that Ms. McDearmid failed to prove ouster of her cotenants. The land was partitioned to give Ms. McDearmid a parcel equivalent to one-half the total; Ms. Olsen, as executrix of the Purley Hamilton estate, received one-fourth; and Ms. Thor and Ms. Hamilton each received one-eighth. Nonexclusive easements were granted for the benefit of each parcel. A judgment was entered in favor of Ms. McDearmid to reimburse her for real property taxes she paid on the proportional interests of the other cotenants.

At trial, Ms. McDearmid argued she furnished the money used to purchase the land and title was taken by others merely as trustees for her benefit. She offered supporting documentary evidence and testimony by herself and Janice Peterson. The trial court sustained plaintiffs' objection to the proffered evidence based on hearsay and RCW 5.60-.030.[3] Ms. McDearmid assigns error to the trial court's refusal to consider the offered evidence and contends she was not permitted to make adequate offers of proof.

---

[3]RCW 5.60.030:

"No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: *Provided, however*, That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or limited guardian of the estate or person of any incompetent or disabled person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person, or by any such minor under the age of fourteen years: *Provided further*, That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."

■ RCW 5.60.030 prohibits testimony from a party in interest as to (1) any transaction had by him or her with the deceased and (2) any statement made to him or her, or in his or her presence, by the deceased, when the testimony is adverse to the deceased and the opposing party claims through the deceased's estate. Traditionally referred to as a "deadman's statute", the objective of such statutes generally has been described as follows:

> The object of that statute is to prevent persons whose interests are adverse to the estates of deceased or insane persons from testifying to transactions had with, or statements made by, such deceased or insane persons. . . . The statutory rule was formulated in recognition of the fact that, when the lips of the one who is said to have made the statement, or with whom the transaction is alleged to have been had, are sealed in death, it becomes difficult, and often impossible, to rebut such adverse testimony.

(Citations omitted.) *McFarland v. Department of Labor & Indus.*, 188 Wash. 357, 362-63, 62 P.2d 714 (1936). *See also Thompson v. Henderson*, 22 Wn. App. 373, 591 P.2d 784 (1979); Comment, *The Deadman's Statute in Washington*, 15 Gonz. L. Rev. 501 (1980).

■ If the person wanting to testify has an interest adverse to the decedent's estate and the opposing party claims through the estate, RCW 5.60.030 applies if the testimony offered involves a transaction with the deceased or communication by the deceased to the witness or in the presence of the witness. A transaction has been described as the " 'doing or performing of some business . . . or the management of any affair . . . [and] include[s] a tort and . . . is much broader than a contract." *In re Estate of Shaughnessy*, 97 Wn.2d 652, 656, 648 P.2d 427 (1982) (quoting *In re Estate of Wind*, 27 Wn.2d 421, 426, 178 P.2d 731, 173 A.L.R. 1276 (1947)), *aff'd after remand*, 104 Wn.2d 89, 702 P.2d 132 (1985). The test is "whether the deceased, if living, could contradict the witness of his own knowledge". *King v. Clodfelter*, 10 Wn. App. 514, 516, 518 P.2d 206 (1974); *Vogt v. Hovander*, 27 Wn. App. 168, 616 P.2d 660 (1979); *In re Estate of Wind, supra*.

With respect to the person making the statement (the decedent), the statute may not bar statements made in cases where the party having the adverse interest is not a natural person. *Northern Bank & Trust Co. v. Harmon*, 126 Wash. 25, 217 P. 8 (1923). In *Northern Bank*, the court explained as follows:

> Our statute, it will be observed, applies, in its terms, only in the case of the death of a natural person who is a principal in the contract. It makes no reference to corporations, or to agents of corporations, or even to agents of deceased natural persons, and to read into it this further exception would be, we believe, an unwarranted extension of its terms."

*Northern Bank*, at 27 (quoting *Beaston v. Portland Trust & Sav. Bank*, 89 Wash. 627, 155 P. 162 (1916)).

Ms. McDearmid argues she could testify as to what *she did* such as *her* acts in withdrawing money, paying for the land and recognizing the land as her own. In response, Ms. Thor and Ms. Hamilton argue the proffered testimony, in substance, related to transactions with the deceased and was prohibited. They cite as authority *Spencer v. Terrel*, 17 Wash. 514, 50 P. 468 (1897).

In *Spencer*, a widower sought to establish that property purchased after his marriage to his deceased wife and titled in her name was his separate property. The widower offered testimony to explain where the purchase money came from, why the deed was taken in his wife's name, and why he included it as community property in the administration of his wife's estate. Although the trial court allowed the testimony, the appellate court reversed.

> It is contended by the respondent that this was not testifying with relation to any transactions with the deceased, but we are inclined to think that in substance it was. The complaint alleges that the deed to the property was made to Laura Spencer in trust for the plaintiff, and if there is any force or efficacy to plaintiff's testimony at all, it must be for the purpose of establishing the fact alleged in the complaint that the true transaction was the receiving of the deed by the deceased Laura in trust for the plaintiff. If it would be incompetent, as it surely would under the statute, for the plaintiff to testify

that the deed was not what it purported on its face to be, but that it was in reality a deed in trust for his benefit, then it would be incompetent to allow him by indirection to prove that which the law would not allow him directly to testify to . . ..

*Spencer*, at 519.

*Spencer* is persuasive. *See also Diel v. Beekman*, 7 Wn. App. 139, 499 P.2d 37, *review denied*, 81 Wn.2d 1007 (1972).

[W]hen it appears that there was a personal transaction by the interested party with the deceased and that the testimony offered tends to show either what did take place between the parties or what did not, it must be excluded by force of the statute so long as it concerns the transaction or justifies an inference as to what it really was.

*Diel*, at 152 (quoting *Martin v. Shaen*, 26 Wn.2d 346, 352, 173 P.2d 968 (1946)).

Although testimony which relates solely to the conduct of the witness is admissible, the testimony deemed inadmissible by the trial court here related, in substance, to transactions between Ms. McDearmid and her deceased parents. Ms. McDearmid was the "party in interest" and Ms. Thor and Ms. Hamilton were the "adverse parties" deriving their claims from their deceased mother. Ms. McDearmid's claims were adverse to both parents when living and adverse to her mother's estate upon her death. The testimony offered could have been contradicted by either or both parents. Further, although title to some of the land was originally held by J.E. Hamilton & Sons, Inc., the corporation deeded the land to Rosa Hamilton in 1942 and she retained record title until her death. All requirements of the deadman's statute were met and, unless the statute was waived, the proffered testimony was properly refused.

Ms. McDearmid also contends that because witnesses testified regarding her interest in the property, she had the right to confirm, deny or otherwise explain this evidence. In essence, she argues any objection under RCW 5.60.030 was waived. Ms. Thor and Ms. Hamilton argue their cross

examination of Ms. McDearmid was not as to matters forbidden by the statute. She was cross-examined as to probate documents she executed as coadministrator, her payment of taxes, her visits and activities on the property, and communications with the parties regarding contribution toward payment of taxes.

■ RCW 5.60.030 may be waived by an adverse party by (a) failure to object, (b) cross examination which is not within the scope of direct examination, and (c) testimony favorable to the estate about transactions or communications with the decedent. *McGugart v. Brumback*, 77 Wn.2d 441, 451, 463 P.2d 140 (1969). *See also In re Estate of Davis*, 23 Wn. App. 384, 385-86, 597 P.2d 404, *review denied*, 92 Wn.2d 1026 (1979). The record does not support Ms. McDearmid's claim of waiver, either by introducing favorable testimony or cross-examining beyond the scope of direct examination.

Ms. McDearmid attempted to introduce a letter from her father to her mother. It purportedly supported Ms. McDearmid's contention her parents asked her to make the land purchases.

■ RCW 5.60.030 does not bar documentary evidence, although it may limit testimony about the documents. *Wildman v. Taylor*, 46 Wn. App. 546, 731 P.2d 541 (1987). The trial court should have admitted the letter from James E. Hamilton to Rosa Hamilton. However, testimony by Ms. McDearmid regarding it was properly refused. The error did not affect a substantial right, however, and therefore does not warrant reversal. ER 103(a).[4]

Ms. McDearmid contends the court erred in refusing to admit the testimony of Ms. Peterson as to communications she overheard and gestures she observed at a meeting between Ms. McDearmid and her two brothers shortly after

---

[4]ER 103(a) provides:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . .".

Rosa Hamilton died.[5] The testimony was offered to prove the two brothers disclaimed their interest in the land. Ms. McDearmid argues the testimony, although hearsay, was admissible based on the exception for statements against interest.

■ ER 804(b)(3) provides that a statement against interest is not excluded by the hearsay rule if the declarant is unavailable as a witness. A statement against interest is defined, in relevant part, as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest . . . or [tended] to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.

A "statement" is defined for purposes of the rule as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion". ER 801(a). Nonassertive conduct is not a statement. Comment, ER 801 (citing 5 R. Meisenholder, Wash. Prac., *Evidence* § 387 (1965 & Supp.)).

Here, the gestures which Ms. Peterson wanted to testify about were not statements under ER 804(b)(3) because they were not sufficiently assertive. They were so ambiguous it is not possible to characterize them as contrary to the declarants' interests. Finally, as set forth in 5B K. Tegland, Wash. Prac., *Evidence* § 403, at 267 (1989):

> In "close" or "arguable" situations, it is helpful to remember the general overriding principle that the instant hearsay exception is intended to apply only to statements that are

---

[5]When counsel for Ms. Thor and Ms. Hamilton objected to the testimony of Ms. Peterson as to the substance of the conversation she overheard, counsel for Ms. McDearmid made the following offer of proof:

"MR. MEAGHER: The testimony of this witness would be that indeed she did hear a conversation between Mrs. McDearmid, Purley and Durley, right after the death of their mother in which this property was discussed, that the parties got into a disagreement, Purley and Durley walked away, threw their hands up and that was the end of their interest and involvement in this property. And that's the offer of proof."

likely to be trustworthy, considering the surrounding circumstances and the context in which they are made.

(Footnote omitted.) The statements here were not only nonverbal and probably nonassertive, they would have occurred 43 years before trial when Ms. Peterson was 13 or 14 years old.[6] We question the trustworthiness of the testimony for the purpose it was offered. In fact, throwing one's hands in the air would seem more consistent with frustration than with quitclaiming.

■ Ms. McDearmid's contention the trial court did not permit her to make a record for appellate review lacks merit. An offer of proof performs three functions: it informs the court of the legal theory under which the offered evidence is admissible; it informs the judge of the specific nature of the offered evidence so that the court can assess its admissibility; and it creates a record adequate for review. *State v. Ray*, 116 Wn.2d 531, 538, 806 P.2d 1220 (1991), and cases cited therein.

■ The record here is replete with offers of proof in the form of summaries of evidence by counsel. ER 103(a)(2) does not specify the procedure which must be followed or allowed in making an offer of proof. Although it may be the "desirable practice" to have offers of proof in the form of questions and answers from the witness under certain circumstances, *Mad River Orchard Co. v. Krack Corp.*, 89 Wn.2d 535, 537, 573 P.2d 796 (1978), if the substance of the excluded evidence is apparent, the offer is sufficient. *Ray*, at 539.

We next address Ms. McDearmid's contention that numerous findings of the trial court were not supported by substantial evidence.

---

[6]Counsel for Ms. Thor and Ms. Hamilton did not assert a statute of limitation defense to the constructive trust/resulting trust and adverse possession counterclaims of Ms. McDearmid. However, the deeds at issue were received and recorded in the 1920's and 1930's, more than 50 years before trial. Although Ms. McDearmid may not have had knowledge of how the deeds were originally issued or that her father and the corporation subsequently transferred their interests to her mother, as coexecutor of her mother's estate, Ms. McDearmid knew the status of title in 1943-44 when the estate was administered and could have made some effort to prove her ownership then.

 There is a presumption in favor of the trial court's findings and the party claiming error has the burden of showing they are not supported by substantial evidence. *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369, 798 P.2d 799 (1990). After a comprehensive review of the record, we find substantial evidence exists to support the findings to which Ms. McDearmid has assigned error. Although Ms. McDearmid's testimony was in many respects at odds with certain findings, the issue of credibility is for the trier of fact to decide. The trial court, in a bench trial, evaluates the credibility of witnesses. The appellate court does not substitute its judgment for that of the trial court in reviewing findings of fact. *Fisher Properties*, at 369-70.

Ms. McDearmid contends the trial court's findings do not support the conclusion and judgment partitioning the land and dismissing her counterclaims based on resulting trust, constructive trust and adverse possession.

 We first address Ms. McDearmid's claim based on a resulting trust.

> A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property.

*Engel v. Breske*, 37 Wn. App. 526, 528, 681 P.2d 263 (quoting 5 A. Scott, *Trusts* § 404.1, at 3213 (3d ed. 1967)), *review denied*, 102 Wn.2d 1025 (1984). The intention that the beneficial interest in the property not go with the legal title is a necessary element of a resulting trust, and it "may be inferred from the terms of the disposition or from the accompanying facts and circumstances." *Breske*, at 529.

> [T]he whole doctrine of resulting trusts is founded upon the principle of a presumed *intention* to create a trust; and where the facts and circumstances are such as reasonably indicate an absence of such intention or indicate a contrary intention, the principle should not be applied. 65 C. J. 366, Trusts, § 141; 4 Pomeroy, Equity Jurisprudence (5th ed.), 82, § 1040.

*Diel v. Beekman*, 7 Wn. App. 139, 148, 499 P.2d 37 (quoting *Creasman v. Boyle*, 31 Wn.2d 345, 354, 196 P.2d 835 (1948)), *review denied*, 81 Wn.2d 1007 (1972).

When property is taken in the name of a grantee other than the person advancing the purchase money, *in the absence of other evidence of intent*, that grantee is presumed to hold legal title subject to the equitable ownership of the person advancing the consideration. *In re Estate of Spadoni*, 71 Wn.2d 820, 822, 430 P.2d 965 (1967); *Mouser v. O'Sullivan*, 22 Wn.2d 543, 546, 156 P.2d 655 (1945); *Scott v. Currie*, 7 Wn.2d 301, 109 P.2d 526 (1941); *Breske*, at 529; *Richards v. Richards*, 5 Wn. App. 609, 611, 489 P.2d 928 (1971). The burden of proof is on the party asserting the trust. *Diel*, at 148. Although the resulting trust may be proven by parol evidence, the evidence must be clear, cogent and convincing. *Spadoni*, at 823; *Mouser*, at 546.

Here, even if we accept Ms. McDearmid's contention she provided the purchase money for the land, a *presumption* of a resulting trust in her favor would arise only *absent a contrary intent*. Was there substantial evidence to indicate a contrary intention? We conclude there was.

The deeds to the Okanogan County land were taken variously in the names of Ms. McDearmid's parents and the family corporation. The corporation and her father thereafter deeded their interests to her mother. There was no indication when the land was reconveyed that the mother was taking title as the sole successor trustee for Ms. McDearmid's benefit. Additionally, Ms. McDearmid, as coadministrator of her mother's estate, administered a probate which inventoried and distributed the land as part of the estate, which is evidence of a contrary intention. Thereafter, Purley Hamilton executed a deed attempting to convey his interest to his daughter, and Nevrene Ranes executed a deed conveying her interest to Ms. McDearmid. Any presumption which arose as to the existence of a resulting trust was overcome by this evidence of contrary intent. The trial court's conclusion there was no resulting trust is supported by the findings and the evidence, even if the evidence ruled inadmissible were considered.

Unlike a resulting trust, a constructive trust can arise absent an intention by the parties to create a trust.

*Scymanski v. Dufault*, 80 Wn.2d 77, 88-89, 491 P.2d 1050 (1971). The principal objective in imposing a constructive trust is to prevent unjust enrichment. *Scymanski*, at 88-89. Here, there are no equitable reasons to impose a constructive trust. To the extent Ms. McDearmid paid more than her share of the real estate taxes, the trial court entered a judgment against the other parties in her favor.

Ms. McDearmid also claims title by adverse possession. A cotenant claiming adverse possession as to another cotenant must prove "ouster". An ouster requires proof which is "stronger and more convincing than that necessary to sustain an ordinary claim of adverse possession". *Silver Surprize, Inc. v. Sunshine Mining Co.*, 88 Wn.2d 64, 66, 558 P.2d 186 (1977); *McKnight v. Basilides*, 19 Wn.2d 391, 143 P.2d 307 (1943). The question is whether there was clear, unequivocal, unmistakable or convincing evidence, not just substantial evidence, to support Ms. McDearmid's claim of adverse possession. *Silver Surprize*, at 66, and cases cited therein.

The evidence is not substantial, much less clear, unequivocal, or convincing, that the other cotenants were ousted by Ms. McDearmid. They and their successors enjoyed the use of the property at will for 40 years, just as did Ms. McDearmid. The fact that Ms. McDearmid may have used it more is insufficient to prove ouster.

Ms. McDearmid agreed at the commencement of trial that if she did not prevail on her adverse possession or resulting and constructive trust claims, the property could be partitioned. Thus, the trial court properly ordered partition.

Ms. McDearmid's final contention is that the evidence and findings of fact as to the nonexclusive easements to existing roadways do not support the conclusion of law and judgment.

Contrary to the assertion by Ms. Thor and Ms. Hamilton, the trial court did not enter findings relating to roadways and easements. Although the trial judge viewed the premises and heard limited testimony from a real estate

broker called by Ms. McDearmid, there are no findings or evidence sufficient to support the location or extent of access easements. We remand for further proceedings solely for purposes of defining and locating those easements. The judgment is otherwise affirmed in its entirety.

SHIELDS, C.J., and GREEN, J. Pro Tem., concur.