25 P.3d 1032 (2001)
106 Wash.App. 699
David P. LAUE, Appellant,
v.
ESTATE OF Keith A. ELDER, and Hartford Casualty Insurance Company, Respondents.
No. 46098-6-I.
Court of Appeals of Washington, Division 1.
May 21, 2001.
Publication Ordered June 11, 2001.
Reconsideration Denied July 17, 2001.
As Amended August 22, 2001.
*1034 Richard Lamar Pope, Seattle, for Appellant Laue.
Gary John Krohn, Robert A. McConnell, Lagerquist & McConnell, Inc., Ps., Seattle, for Respondent Estate of Keith Elder.
H. Lee Cook, Stewart Sokol & Gray, Llc, Portland, Or., for Respondent Hartford Casualty Insurance.
*1033 BECKER, A.C.J.
David Laue claims that the Estate of Keith Elder owes him money based on a partnership he and Elder allegedly formed in 1993, five years before Elder died. Most of Laue's evidence is inadmissible because of the deadman's statute, RCW 5.60.030. Also, Laue failed to timely serve Elder's Estate with notice of his partnership claims within the statute of limitations. Accordingly, we affirm the trial court's grant of summary judgment dismissing the claims against Elder's estate. We remand for entry of findings showing the basis for the court's award of attorney fees to the Estate.
In May, 1993, Keith Elder and David Laue organized a used car dealership called Top Kat Auto Sales in Lynnwood, Washington. The dealership opened in July. Laue says he advanced approximately $7,155 in cash to Elder to assist him in starting the dealership. There is no written record of this transaction. Laue also claims he consigned four vehicles to the dealership. The record includes written consignment agreements showing three of those transactions.
Laue worked at Top Kat for a period of approximately eight and one half months beginning in late June, 1993. Sometime during that period, the relationship between Laue and Elder deteriorated. In March, 1994, Elder ordered Laue excluded from the premises, and refused his demands for reimbursement. Laue retained counsel, who, in an April 5, 1994 letter to Elder, demanded that Elder reimburse Laue the $7,155 loaned to the business, $6,200 for the value of the consigned vehicles, and eight and one-half months employee compensation. Elder refused.
Laue sued Elder in January, 1995, alleging claims of recovery of money loaned; payment for consigned vehicles; violations of the Consumer Protection Act; recovery on a surety bond; payment for services rendered; and violation of RCW 49.52.070, which provides for double damages from employers who wrongfully withhold wages from employees. Laue joined Hartford Casualty Insurance Company as a party. Hartford was the surety on the Top Kat dealership's motor vehicle dealer bond.
Hartford appeared in June, 1995, but did not file an Answer. Laue obtained an order of default judgment against Hartford in September, 1996. Hartford later agreed to a judgment against it under its surety bond.
*1035 Laue's judgment against Hartford was for $9,394.98, which included $6,200 for the value of the autos consigned by Laue as well as prejudgment interest and costs. Laue then assigned his consignment claim to Hartford.
Laue did not serve Elder with the summons and complaint until January 29, 1998. Elder died on February 15, 1998. Eventually, Laue substituted Elder's estate as defendant and obtained a default judgment against the Estate.
The Estate's current counsel filed a notice of appearance on behalf of the Estate on December 15, 1998. Laue and the Estate agreed to a vacation of the default judgment reflected in an order dated June 11, 1999. This order granted Laue leave to amend his complaint to include a cause of action for distribution of partnership assets. Laue did not, however, file an amended complaint at this time.
The Estate formally answered Laue's 1995 complaint in July, 1999 and moved for summary judgment in September, 1999. Laue at this point issued his first request for discovery in which he sought the production of Top Kat business records kept by Elder. The Estate objected to the discovery request as untimely, but provided the records it had in its possession. The parties agreed to continue the summary judgment hearing until December 2, 1999.
The day before the summary judgment hearing, Laue filed an amended complaint, which mirrored his initial complaint but added a claim for distribution of partnership assets. At the hearing, Laue served the Estate with his response to the Estate's motion for summary judgment and with his amended complaint. The court assessed terms of $500 against Laue's attorney for the belated filing and service of the amended complaint, and authorized the Estate to move to strike it, then continued the hearing for two weeks. On December 15, 1999, the court granted the Estate's motion for summary judgment and dismissed Laue's complaint and its amendments in their entirety, as well as any claims against the Estate by Hartford. Laue appeals.
A court reviews a grant of summary judgment de novo, engaging in the same inquiry as the trial court. Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999). The appellate court considers the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c).

Inadmissible Evidence
The Estate contends that the evidence Laue presents in support of his causes of action is inadmissible under the deadman's statute, RCW 5.60.030:
No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: Provided, however, That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person... then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person[.]
The purpose of the deadman's statute is to prevent interested parties from giving self-serving testimony about past conversations or transactions with a person who is now dead or incompetent. Lasher v. University of Washington, 91 Wash.App. 165, 169, 957 P.2d 229, review denied, 136 Wash.2d 1029, 972 P.2d 464 (1998). See also Thor v. McDearmid, 63 Wash.App. 193, 199, 817 P.2d 1380 (1991) (When the lips of one who is said to have made the statement, or with whom the transaction is alleged to have been had, are sealed in death, it becomes difficult, and often impossible, to rebut such adverse testimony). RCW 5.60.030 does not bar documentary evidence although it may *1036 limit testimony about the documents. Thor, 63 Wash.App. at 202, 817 P.2d 1380.
The evidence challenged by the Estate as inadmissible under the deadman's statute is that presented by Laue in three declarations filed with the trial court in early 1998, two of them after Elder's death. These declarations contain Laue's assertions about loans, consignment agreements, and employment agreements he claims he and Elder made for the time he worked at Top Kat Auto Sales.
Laue contends that the deadman's statute applies only to lawsuits filed against persons who are deceased at the time of filing, and not to lawsuits filed against persons who die after filing and before a trial can be held. In support of this contention, Laue cites Neis v. Farquharson, 9 Wash. 508, 37 P. 697 (1894) and Beaston v. Portland Trust & Sav. Bank, 89 Wash. 627, 155 P. 162 (1916). These cases do not support Laue's proposition. They address the special case of certain deposition testimony that had been taken before trial for use at trial, at a time when the opposing party was still alive and had a realistic opportunity to test the reliability of the statements by cross-examination. They cannot be interpreted as allowing into evidence a self-serving declaration filed by one party, after death has removed the adverse party whose knowledge would be the most useful for cross-examination. It would be impossible for the Estate to use Elder's statements to rebut the adverse evidence contained in Laue's second and third declarations because Laue filed them after Elder's death. They contain precisely the type of evidence the deadman's statute bars.
Laue argues that under Neis, Laue's first declaration is admissible because he filed it before Elder's death. But even assuming Laue's first declaration is admissible, it is insufficient to prove any of Laue's claims. That declaration alleges the value of the vehicles Laue consigned to the dealership as $6,200. Laue filed that declaration in support of his judgment against Hartford. Because the deadman's statute does not bar the admission of documents, the three consignment agreements attached to Laue's third declaration are also admissible. The consignment agreements describe the make and model of the consigned cars and state that Laue is the owner of the cars and Top Kat Auto Sales is the consignee dealer. Laue acknowledged his ownership of the vehicles by signature on all three agreements. A manager for Top Kat Auto Sales signed on behalf of the dealership as consignee in all three of the agreements. Laue also signed on behalf of the dealership as consignee on one of the agreements. These agreements and the testimony contained in Laue's first declaration tend to show that Laue did consign three vehicles to Top Kat. But that evidence does not prove that Top Kat ever sold or otherwise disposed of the vehicles as alleged by Laue. Furthermore, Laue obtained a judgment against Hartford on Top Kat's surety bond for the value of the consigned vehicles and then assigned his consignment claim to Hartford. He has not explained how, under these circumstances, he can continue to assert a claim for money owed for consignment against the Estate. Accordingly, his consignment claim against the Estate fails as a matter of law.
Laue also argues that the deadman's statute does not prohibit employees from testifying about the nature and value of services performed for the decedent. See King v. Clodfelter, 10 Wash.App. 514, 517, 518 P.2d 206 (1974). But Laue cannot show he was an employee except by his own declaration which is inadmissible under the deadman's statute. Further, while an employee may testify to the nature of the work performed and any payment received by the employee, the employee may not testify to the existence of a transaction or contract with a decedent employer, which is what Laue seeks to do by claiming he was Elder's employee. See King, 10 Wash.App. at 517, 518 P.2d 206.
The admissible evidence would only support the conclusion that if Laue was anything, he was a partner, not an employee, of Top Kat. Randal Elder, one of Keith Elder's sons, testified that a Top Kat business card identified Laue as an owner of the business and that Laue and Keith Elder were in business together as partners. Walt Moss, a *1037 contractor who knew the Elders, testified that Elder's other son, Dean, told him that Keith Elder was going to start a car dealership with financial backing from Laue. Melissa Miller, a bookkeeper for Top Kat, testified that to the best of her knowledge, Laue and Elder were partners and that Elder had no employees. Even when viewed in a light most favorable to Laue, this evidence does not support a conclusion that Laue was an employee.
The sole remaining evidence presented by Laue in support of his causes of action is an April 19, 1994 letter from Elder's then attorney, Christopher Meleney. Laue claims Mr. Meleney's letter admitted the transactions between Laue and Elder, thus proving the Estate's liability.
Mr. Meleney's April 19 letter was a response to an April 5, 1994 demand letter sent by Laue's attorney to Elder. Laue's attorney's letter stated:
Due to your evident fraudulent intent in your course of conduct over the last few days with Mr. Laue, we are giving you until 5:00 p.m. on Friday, April 15, 1994 to repay these amounts to Mr. Laue. If you fail to pay Mr. Laue $23,105.00 by this time, or make satisfactory arrangements, we will immediately initiate a lawsuit in Snohomish County Superior Court for its recovery, plus triple damages, attorney fees and court costs. Your prompt attention to this matter will be appreciated.
Mr. Meleney's April 19 letter responded by describing Laue's claims as contributions to partnership capital rather than loans or consignments:
The evidence suggests that the characterization of the facts stated by your client are incorrect. Mr. Laue was not an employee of Mr. Elder but a partner in the Top Kat Auto Sales business. In fact, Mr. Laue had business cards printed up in which he was identified as the owner and identified himself to several business contacts of the company as a partner. Mr. Laue's claimed "loans" and "consignment sales" were not loans or consignment sales but contributions to the partnership capital....
. . .
Mr. Elder is willing to make an arrangement with Mr. Laue by purchasing Mr. Laue's one half interest in the partnership or, in the alternative, might consider an offer from Mr. Laue to purchase the partnership interest from him. In any event Mr. Elder does not believe that it is wise to continue in the partnership with Mr. Laue.
I look forward to hearing from you regarding the establishment of a time and place to negotiate a resolution to this matter without undue cost to either of the parties....
Laue contends that a jury, by virtue of this letter, could find the Estate liable for the value of Laue's claimed loans or contributions to partnership capital. Because Mr. Meleney's letter did not deny the allegations presented in Laue's demand letter, Laue characterizes it as an admission by silence under State v. Cotten, 75 Wash.App. 669, 879 P.2d 971 (1994). Cotten held that a criminal defendant adopted his co-defendant's admission of guilt by not responding to the co-defendant's statement at the time it was made. Deciding under ER 801(d)(2)(ii) that the statement was not inadmissible hearsay, the court stated that silence will constitute an adoptive admission only if the "party-opponent heard the statement, was able to respond, and the circumstances surrounding the statement were such that it is reasonable to conclude that the party-opponent would have responded `had there been no intention to acquiesce'." Cotten, 75 Wash.App. at 689, 879 P.2d 971 (quoting State v. Neslund, 50 Wash.App. 531, 551, 749 P.2d 725, review denied, 110 Wash.2d 1025 (1988)).
The circumstances surrounding Mr. Meleney's letter are not such that it is reasonable to conclude Elder was acquiescing to Laue's claims. Mr. Meleney's letter is not an admission by silence. It is an offer to settle. Offers to settle are inadmissible under ER 408.
Laue objects to having this court affirm the dismissal of his claim on the basis of ER 408 because, he says, the Estate did not timely raise an ER 408 argument below. The Estate moved for summary judgment *1038 alleging that Laue's claims were not supported by admissible evidence. This placed the burden on Laue to show that his evidence was admissible. The Estate did not fail to preserve the issue. In any event, it is well settled that the judgment of a trial court can be affirmed on any basis established by the pleadings and supported by the proof, even if the trial court did not consider it. LaMon v. Butler, 112 Wash.2d 193, 200-201, 770 P.2d 1027 (1989). Laue has not offered a convincing reason why the letter of Mr. Meleney would be admissible despite its quite obvious nature as a settlement offer.
Laue's claims concerning the estate's liability for loans and agreements to compensate Laue fail because no admissible evidence supports them. Laue has failed to show how the Estate violated the Consumer Protection Act. Accordingly, the trial court properly granted judgment to the Estate on these claims.

Statute of Limitations
Laue's final cause of action, added in his amended complaint, alleges that he is entitled to a partnership distribution by virtue of his partnership with Elder. In view of the tardiness of the amended complaint, it is not clear that Laue has preserved this claim for appeal. The trial court considered Laue's amended complaint when it dismissed all of his claims on summary judgment. But even if his amended complaint was not properly dismissed on procedural grounds, we nevertheless conclude Laue's claim for a partnership distribution fails because it is barred by the statute of limitations. After dissolution, a partner generally cannot bring a suit at law against a former copartner regarding partnership liabilities without first bringing an action to account for and settle the partnership's affairs. Pollock v. Ralston, 5 Wash.2d 36, 41, 104 P.2d 934 (1940). A cause of action for an accounting accrues at dissolution. Malnar v. Carlson, 128 Wash.2d 521, 529, 910 P.2d 455 (1996). Because Laue's partnership claim arises from an alleged partnership agreement that is unwritten, it is subject to a three-year statute of limitation.
The statutory period does not begin to run until dissolution or the exclusion of the complaining partner from participating in the affairs of the partnership. RCW 4.16.080(3); Malnar, 128 Wash.2d at 529-530, 910 P.2d 455. In this case the evidence establishes that Elder excluded Laue from Top Kat Auto Sales no later than March, 1994. Thus, Laue's right to an action for accounting and distribution of partnership assets is barred unless commenced by March, 1997.
Under RCW 4.16.170, an action shall be deemed commenced for purposes of tolling a statute of limitation if a summons and complaint is served "on one or more of the defendants" within 90 days of the date of filing. RCW 4.16.170. Service of process on one of several named defendants within 90 days of the filing of the complaint tolls the statute of limitations as to the remaining defendants. Sidis v. Brodie/Dohrmann, Inc., 117 Wash.2d 325, 329, 815 P.2d 781 (1991).
Laue filed his complaint on January 9, 1995, but he did not serve Hartford, the other named defendant, until June, 1995 more than 90 days after the filing of his complaint. Laue did not serve Elder until January 28, 1998more than three years after the filing of his complaint. If Laue had served either Hartford or Elder within the 90 days required by the statute, the action would have been properly commenced and the statute of limitations would have been tolled. But because 90 days passed before Laue's first service upon either defendant, his action was not properly commenced for purposes of tolling the statute under Sidis and the statute continued to run. Thus, with respect to the Estate, Laue's action commenced for purposes of the tolling of the statute of limitations on January 28, 1998 more than four years after his cause of action for an accounting first accrued. We therefore conclude that Laue's cause of action for partnership distribution was barred by the statute of limitations.

Attorney Fees
Laue challenges the trial court's award of attorney fees to the Estate as improper under RCW 11.96.140. The award of *1039 attorney fees under this statute is discretionary and will not be overturned absent a clear showing of abuse of discretion. Matter of Estate of Niehenke, 117 Wash.2d 631, 647, 818 P.2d 1324 (1991).
According to Laue, RCW 11.96.140 allows the award of attorney fees only in matters pertaining to the administration of an estate. Laue asserts that defending against his lawsuit is not such a matter.
RCW 11.96.140 provides:
Either the superior court or the court on appeal, may, in its discretion, order costs, including attorneys' fees, to be paid by any party to the proceedings or out of the assets of the estate or trust or nonprobate asset, as justice may require.
Washington favors the protection of estates through the award of attorney fees under RCW 11.96.140. See In re Estate of Kerr, 134 Wash.2d 328, 949 P.2d 810 (1998). In Kerr, a will beneficiary unsuccessfully sought the removal of a personal representative. The beneficiary challenged the trial court's award of attorney fees to the estate and argued that RCW 11.68.070, which governs removal actions, does not contemplate the award of fees. The issue was whether the authority to award fees was controlled by the removal statute or by RCW 11.96.140. The Washington Supreme Court reversed a Court of Appeals decision that found fees not to be awardable. The Court reasoned that because the estate bore the cost of litigation to defend its personal representative, the trial court had discretion to award attorney fees under RCW 11.96.140 to protect the estate's interests. Kerr, 134 Wash.2d at 344, 949 P.2d 810.
Like the personal representative in Kerr, Elder's Estate is bearing the cost to defend its interests against Laue's suit in the instant case. Laue claims his suit is an ordinary civil lawsuit in which there is no provision for prevailing party attorneys fees. He contends that he does not seek to affect the administration of the estate, and therefore RCW 11.96.140 should not apply. But as soon as he substituted the Estate for Elder, his suit directly affected the administration of the Estate. Following Kerr, we conclude that the trial court's award of fees was not an abuse of discretion.
Laue also claims that the award of $4,272 in attorney fees for the Estate's motion to vacate is barred by res judicata because the parties did not agree to fees in the stipulated order to vacate the default judgment. Laue misinterprets the nature of res judicata in relation to a motion to vacate. Res judicata bars litigation of claims that were raised, or could have been raised, in a prior action. Marino Property v. Port of Seattle, 97 Wash.2d 307, 312, 644 P.2d 1181 (1982). Laue argues that the Estate could have, but did not, raise the issue of attorney fees at the time of the order vacating the default. But there has been only one action in the instant case, based on the complaint initially filed in 1995. Accordingly, res judicata does not bar the award of fees.
While the trial court did not abuse its discretion in awarding fees, it is unclear whether the amount awarded was reasonable because the trial court did not make any findings of fact or conclusions concerning its award. An award of fees must be reasonable. Progressive Animal Welfare Society v. University of Washington, 114 Wash.2d 677, 688, 790 P.2d 604 (1990). To facilitate appellate review of the reasonableness of a fee award, findings of fact and conclusions of law are required. Mahler v. Szucs, 135 Wash.2d 398, 435, 957 P.2d 632 (1998). Given the absence of an adequate record on review, we remand the fee award to the trial court to develop such a record.
The Estate has requested attorney fees on appeal. Such an award is authorized by RCW 11.96.140 and is appropriate under the facts of this case. The Estate is therefore awarded reasonable attorney fees and costs on appeal, subject to compliance with RAP 18.1(d).
The order of summary judgment is affirmed. The fee order is remanded.
BAKER, J., and GROSSE, J., concur.