# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ELIZABETH M. PARMAN, | No. 57860-3-II |
| Appellant/Cross-Respondent, | |
| v. | |
| ESTATE OF RUTH MARIE PARMAN, and SHAWN PARMAN, a single man, | UNPUBLISHED OPINION |
| Respondents/Cross-Appellants. | |

LEE, J. — Elizabeth Bartlett, formerly Elizabeth Parman, appeals nine orders from the superior court that culminated in the summary judgment dismissal of her claims of unjust enrichment prior to 2015, breach of joint venture/partnership, breach of contract, and promissory estoppel against the Estate of Ruth Parman (the Estate), and tortious interference with business expectancy against Shawn Parman. The Estate and Shawn Parman (collectively, the Parmans) cross-appeal a superior court order denying their motion to cancel a lis pendens.

We reverse the superior court's summary judgment dismissal of Elizabeth's claim for unjust enrichment prior to 2015 and remand for further proceedings. However, we affirm the superior court's dismissal of Elizabeth's other claims against the Parmans on summary judgment. And because the Parmans did not timely appeal the order denying the motion to cancel the lis pendens, we dismiss the Parmans' cross-appeal.

FACTS

A.      BACKGROUND

Elizabeth Bartlett[1] and Shawn Parman married in 1986. Shawn's[2] parents were Robert and Ruth Parman, both now deceased.

In 1997, Elizabeth and Shawn bought a 7.1-acre property in Olympia, Washington, known as the Renata Lane Property. Elizabeth intended to construct a horse ranch on the property. According to Elizabeth, she bought the property with separate gift money from her parents. However, she deposited the funds into a joint checking account she shared with Shawn and used funds from that account to purchase the property in both her and Shawn's names.

Robert and Ruth moved in with Shawn and Elizabeth in 1997. In 1998, Robert, Ruth, Shawn, and Elizabeth agreed to build a home together on the Renata Lane Property where both couples, along with Shawn and Elizabeth's young sons, would live.

In 2000, Shawn and Elizabeth conveyed the Renata Lane Property to Robert and Ruth via quitclaim deed. Shawn and Elizabeth also signed a "Joint Venture and Joint Venture Dissolution Agreement" (JV Agreement). Clerk's Papers (CP) at 106. According to Elizabeth, Robert and Ruth needed to have the property in their name in order to obtain a loan to help with completion of the home construction. Elizabeth contends that "[i]t was never intended by any party that the quitclaim deed conveying the property to Ruth and Robert be an absolute transfer of title." CP at 1853. According to Shawn, it was Shawn and Elizabeth's financial troubles that led to their

---

[1] Bartlett is Elizabeth's current married name. She previously went by Elizabeth Parman.

[2] Unless otherwise indicated, the parties will be referred to by their first names for clarity. No disrespect is intended.

conveyance of the property to Robert and Ruth. According to Ruth, she and Robert agreed to the arrangement to "try to keep a young family together" because Shawn and Elizabeth "couldn't afford a home on their own," and Ruth feared that Elizabeth "would have had to take her boys and go back to her family" otherwise. CP at 379-80.

The JV Agreement stated in relevant part:

SHAWN and ELIZABETH PARMAN . . . and ROBERT and RUTH PARMAN . . . agree as follows:

That the parties hereto entered into a Joint Venture Agreement for the construction of a new residence on a parcel of real estate in Thurston County, State of Washington. It was the intent of the parties that two homes would be constructed on site, one for each of the married parties.

. . . .

Shawn Parman and Elizabeth Parman have insufficient funds to contribute anything further to the joint venture agreement and, accordingly, are unable to continue to participate therein.

. . . .

. . . [I]t is agreed that this joint venture shall be terminated and in exchange for completing the property and funding the same to completion, and holding Shawn and Elizabeth Parman harmless from any financial responsibility, Shawn and Elizabeth Parman will quit claim all right, title and interest in the subject property to Ruth and Robert Parman as their sole and separate property and this joint venture will then be dissolved.

Based upon the foregoing, the parties do hereby agree that upon execution of the Quit Claim Deed divesting Shawn and Elizabeth Parman of any interest in the subject property, they shall be free from any claims of any sort . . . . Further, the subject development shall be the sole and separate property of Ruth and Robert Parman.

CP at 106-08.

3

Elizabeth asserts that the JV Agreement was, in fact, "an explicit understanding" where Elizabeth would

(a) contribute the subject property, purchased from her separate funds, (b) make further valuable improvements to the subject property, and (c) pay one-half the costs of the mortgage, utilities, taxes and the insurance on the subject property beginning in January, 2001, and Bob and Ruth Parman would in return (d) pay one-half the costs of the mortgage, utilities, taxes and insurance on the subject property, (e) complete the construction of a house on the subject property and in addition would (f) convey one-half the subject property to [Elizabeth] and one-half the subject property to Shawn . . . upon the death of Bob and Ruth Parman.

CP at 5.

In 2001, Shawn and Elizabeth filed a Chapter 7 bankruptcy, for which they received a discharge. They did not list the Renata Lane Property as an asset.

In 2004, Robert and Ruth executed parallel wills that conveyed their interest in the Renata Lane Property to one another, and then 50% of the property to Elizabeth with the remainder to Shawn, after the last to die. In 2005, Robert passed away. Elizabeth continued to make improvements to the property over the next several years.

In 2016, Shawn and Elizabeth separated, and in 2017, divorced. Neither Shawn nor Elizabeth listed the Renata Lane Property as an asset in their divorce decree.

Following Shawn and Elizabeth's divorce, Ruth updated her will in 2017 to convey 100% of her interest in the Renata Lane Property to Shawn. According to Ruth, she removed Elizabeth from her will based on the way Elizabeth "treated [her] and the rest of [the] family members." CP at 62.

B.      PROCEDURAL HISTORY

1.      Complaint and Counterclaims

In June 2018, Elizabeth filed a complaint against Ruth and Shawn.  Against Ruth, Elizabeth alleged (1) joint venture/partnership; (2) estoppel; (3) unjust enrichment; and (4) negligent/intentional misrepresentation.  Against Shawn, Elizabeth alleged tortious interference with contract/business expectancy.  Elizabeth sought a judgment against Ruth and Shawn in the amount of expenditures and contributions Elizabeth made to the Renata Lane Property.

In their answer to Elizabeth's complaint, the Parmans advanced a counterclaim to quiet title to the Renata Lane Property.[3]  In her answer to the counterclaim, Elizabeth stated: "It was never intended by any party that the quitclaim deed conveying the property to Bob Parman and Ruth Parman be an absolute transfer of title, and Elizabeth Parman retained an equitable interest in the property and treated the property as though she was a co-owner of the property."  CP at 25.  Further, Elizabeth requested a decree quieting title to her "equitable interest in the property."  CP at 25.  In the alternative, Elizabeth reiterated her initial claim for relief, or a judgment against Ruth in the amount of all expenditures and contributions Elizabeth made on the Renata Lane Property.

In June 2019, Ruth passed away.  In July 2019, Shawn submitted Ruth's 2017 will to probate.  Shawn was appointed as personal representative of Ruth's estate.  The Estate was later substituted in the action brought by Elizabeth.

Elizabeth filed a notice of appearance in the probate of Ruth's estate.  In October 2019, Elizabeth submitted a creditor's claim against the Estate, citing RCW 11.40.070(1).  The claim

---

[3] The Parmans also made a counterclaim for ejectment based on Elizabeth's residence at the Renata Lane Property at the time.  However, the ejectment claim was later abandoned.

alleged that Elizabeth sought to recover "capital contributions to, and her share of the profit from, the joint venture/partnership," amounting to $375,000. CP at 2393. Elizabeth additionally listed as a basis for her claim that the Estate was "unjustly enriched" and that "[f]urther facts and circumstances are set forth in claimant's complaint and answer to counterclaims in the case of *Parman v. Parman*, Thurston County Superior Court cause #18-2-03269-34." CP at 2394. Elizabeth did not, however, contest Ruth's will. The Estate rejected Elizabeth's claim.

      2.     Lis Pendens

In July 2019, Elizabeth filed a notice of lis pendens on the Renata Lane Property. In September 2020, the Parmans moved to cancel the lis pendens because Elizabeth's claims amounted to a money judgment and a lis pendens pertained only to actions affecting real property. According to Elizabeth, her intention in filing the lis pendens was "to ensure that any third-party transferee of the property would take subject to the claims of [Elizabeth] for reimbursement for over $143,500 of her separate funds she spent on improving the property over the nearly 20-year period." CP at 173. She claimed her "equitable interest" in the property affected its title, so a lis pendens was appropriate. CP at 173. Further, Elizabeth argued that under RCW 4.28.320, her action against the Parmans had not "'settled, discontinued, or abated,'" and therefore there was no basis to cancel the lis pendens. CP at 182.

Due to a misunderstanding about motion deadlines, Elizabeth filed her response to the Parmans' motion to cancel the lis pendens one day late. As a result, when she filed her response, she also moved for an extension. The Parmans opposed Elizabeth's motion to extend time. In their opposition to the extension of time, the Parmans claimed that Elizabeth failed to comply with

notice requirements of RCW 4.28.320[4] because she did not personally serve or publish a summons of the lis pendens within 60 days of its filing.

In October 2020, the superior court denied the Parmans' motion to cancel the lis pendens. The superior court reasoned that Elizabeth's claim for unjust enrichment could give rise to an equitable lien, which in turn could give rise to a lis pendens. However, the superior court also stated that "it's premature for the Court to make a decision on the justification under these facts for an equitable lien. It is very possible, in my mind, that the plaintiffs will be unable to establish an equitable lien. However, it is possible they might." Verbatim Rep. of Proc. (VRP) (Oct. 9, 2020) at 29. On the matter of notice, the superior court found that Elizabeth's "very affirmative statement in the answer to the counterclaim is sufficient to put defendants on notice that this claim was being made so . . . it's not a basis to cancel the lis pendens by itself." VRP (Oct. 9, 2020) at 28.

---

[4] RCW 4.28.320 provides in part:

> At any time after an action affecting title to real property has been commenced, . . . the plaintiff, the defendant, or such a receiver may file with the auditor of each county in which the property is situated a notice of the pendency of the action . . . . From the time of the filing only shall the pendency of the action be constructive notice to a purchaser or encumbrancer of the property affected thereby, and every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he or she were a party to the action. For the purpose of this section an action shall be deemed to be pending from the time of filing such notice: PROVIDED, HOWEVER, That such notice shall be of no avail unless it shall be followed by the first publication of the summons, or by the personal service thereof on a defendant within sixty days after such filing.

3.      First Motion for Partial Summary Judgment and Motion to Modify

In September 2021, the Parmans moved for partial summary judgment. The Parmans argued that Elizabeth's claims against Ruth's estate for unjust enrichment, joint venture/partnership, estoppel, and misrepresentation fail because the claims are time-barred and are barred by the doctrine of judicial estoppel. The Parmans also argued that Elizabeth had insufficient admissible evidence to prove her claims. Additionally, the Parmans argued that Elizabeth advanced the unjust enrichment claim because she could not allege a breach of contract claim based on the Statute of Frauds and the Deadman's Statute. In response, Elizabeth argued that she did advance a breach of contract claim in her complaint and that it had been wrapped into her allegation against Shawn for tortious interference with a contract or business expectancy. Elizabeth asserted that "the contract is clearly to make a will." VRP (Dec. 10, 2021) at 12.

The superior court granted the Parmans' motion in part and dismissed Elizabeth's causes of action against Ruth's estate for misrepresentation, joint venture/partnership, and unjust enrichment "as to any and all alleged improvements to the Renata Lane Property completed before June 27, 2015." CP at 1985. However, the superior court denied the Parmans' motion as to Elizabeth's "'estoppel'" claim. CP at 1985. Further, the superior court stated it would acknowledge Elizabeth's breach of contract claim, despite "reading the complaint under Section VII as not artful." VRP (Dec. 10, 2021) at 31. In the order on the Parmans' motion for partial summary judgment (December 2021 Order), the superior court stated: "[A]t the hearing on the motion, there arose an issue regarding whether [Elizabeth's] complaint states a cause of action for breach of contract. The Court rules that the complaint states such a claim, and this order makes no rulings regarding that claim." CP at 1985.

In June 2022, Elizabeth moved to modify the December 2021 Order based on her disagreement with when her unjust enrichment cause of action accrued. The superior court denied Elizabeth's motion to modify.

4.      Motion to Compel, Motion to Strike/Seal, and CR 37(a)(4) Attorney Fees

When Robert had passed away in 2005, his original will had not been found or probated, and Robert was presumed to have died intestate. Additionally, Robert's interest in the Renata Lane Property had never been transferred to Ruth.

In 2020, in order to administer Ruth's estate and her interest in the Renata Lane Property, Shawn opened a probate in Robert's estate. Shawn was appointed as personal representative for Robert's estate. Then, acting in his capacity as personal representative, Shawn quitclaimed Robert's interest in the property to Ruth's estate.

Elizabeth then filed an almost identical creditor's claim against Robert's estate as she had in Ruth's estate, which Robert's estate rejected. Elizabeth subsequently filed a complaint against Robert's estate, alleging nearly identical claims as made against Ruth and Shawn. The superior court dismissed Elizabeth's claims against Robert's estate on summary judgment.[5]

After the superior court dismissed Elizabeth's suit against Robert's estate, Elizabeth apparently presented a purported copy of Robert's 2004 will as an attachment to a declaration,

---

[5] Elizabeth appealed, and we affirmed the summary judgment dismissal of Elizabeth's claims against Robert's estate. *See Bartlett v. Estate of Robert Parman*, No. 56536-6-II (Wash. Ct. App. Nov. 15, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056536-6-II%20Unpublished%20Opinion.pdf, *review denied*, 1 Wn.3d 1013 (2023).

dated November 16, 2021, in opposition to Robert's estate's motion for attorney fees.[6] Despite testifying in a prior deposition that she did not have a copy of Robert's will, Elizabeth's declaration stated that she had obtained a copy of Robert's will directly from John Turner,[7] Robert's estate attorney in 2004.

Dan Young, Elizabeth's attorney, allegedly contacted Althauser Rayan & Abbarno, LLP, the successor custodian of Robert's will. Young identified himself as an attorney for Robert's estate and requested a copy of Robert's will. Althauser Rayan & Abbarno emailed a copy of the will to Young. According to Young, he never represented to Althauser Rayan & Abbarno that he was an attorney for Robert's estate.

In December 2021, Elizabeth subpoenaed Althauser Rayan & Abbarno to produce the original estate planning files for Robert and Ruth, along with any communication the firm had had with Elizabeth; Elizabeth's current husband, Don Bartlett; or Young.

In January 2022, both Robert's estate and the Parmans moved to strike the copy of Robert's will, references to that will, and to seal the will. Shortly after, in her case against the Parmans, Elizabeth filed a motion to compel Althauser Rayan & Abbarno to produce Robert's will. In support of her motion, Elizabeth filed a declaration which again attached a copy of Robert's 2004 will. Elizabeth's declaration stated: "Attached as Exhibit A is a copy of Robert's will from 2004,

---

[6] Elizabeth's November 16, 2021 declaration filed in Elizabeth's suit against Robert's estate is not a part of the record in this appeal.

[7] The record shows that Turner had previously retired and had not been in communication with any of the parties.

obtained within the last few months from John Turner through the office handling John Turner's records and through my attorney." CP at 685.

The superior court addressed both the motion to compel and the motion to strike/seal in the same hearing. Regarding the motion to compel, Young argued that the "primary thing that [he] would like compelled production of is the will of Robert Parman." VRP (Jan. 28, 2022) at 8. The superior court asked Young for justification for the motion to compel given that he and Elizabeth already possessed a copy of Robert's will. Young stated that he filed the motion to compel "to eliminate . . . the false issue that [the Parmans] raise that [he] acquired it illegitimately." VRP (Jan. 28, 2022) at 12. The Parmans argued that Robert's will copy came from a client file protected by RPC 1.6.

The superior court granted the Parmans' motion to seal all copies of Robert's will, but reserved ruling on whether to strike the will.[8] In its written order, the superior court made the following findings:

> 12. The Court need not make, and does not make, any credibility determinations or resolve the differences between the statements [of the parties], because even under Mr. Young's version of events, his actions do not constitute a lawful way for him to obtain any document from the attorney file of Robert Parman.

> 13. The interest at stake in [the Parmans'] motion to seal/strike is the client-attorney relationship between a decedent and his former attorneys, Rules of Professional Conduct 1.6.

---

[8] The superior court struck the copy of Robert's will as it related to Elizabeth's case against Robert's estate.

11

14.     Striking the document from the record[9] and sealing it is the least restrictive means available to return Robert Parman's confidential file to status *quo ante*.  To do otherwise would be to reward improper action.

. . . .

16.     In this cause number, where the purported document was proffered on reconsideration and after resolution of all the merits, the Court is comfortable concluding that the document had no colorable relevance to the issues for which it was raised.

CP at 1085-86 (emphasis in original).

The superior court also denied Elizabeth's motion to compel.  The written order denying the motion to compel stated in relevant part:

[T]he file and materials subject to the subpoena is confidential client information subject to RPC 1.6. . . .

. . . [B]ased on the materials reviewed and the argument presented, there is no justification to authorize the release of the confidential client file pursuant to court order as to do so would be rewarding improper behavior. . . .

. . . [W]hether or not there was a misrepresentation made in obtaining a copy of the will, obtaining it in the manner in which it was obtained was not a lawful means of obtaining that document in an adversarial proceeding.

CP at 1088.

Following the hearing on the motion to strike/seal and motion to compel, the Parmans moved for attorney fees pursuant to CR 26(b), CR 37, and RCW 4.84.185.  The superior court

---

[9] The superior court had asked the parties to prepare separate orders reflecting its decisions in the two cause numbers (the case Elizabeth filed against the Parmans and the case Elizabeth filed against Robert's estate).  The language from the superior court's order specifically strikes the copy of Robert's will in the case against Robert's estate.  However, the order as it pertains to Elizabeth's suit against the Parmans directs the clerk of court to only seal the copy of Robert's will.

awarded the Parmans $13,229.50 in attorney fees and $221.61 in costs pursuant to CR 37(a)(4).

The order awarding attorney fees included the following findings:

1. In seeking reconsideration of this Court's order dismissing the Complaint in and in opposing a motion for attorneys' fees in *Bartlett v. Estate of Robert Parman*, No. 21-2-01093-34, Elizabeth Bartlett filed a document improperly obtained from a confidential attorney file of the decedent, Robert Parman. She also filed it in this case.

   . . . .

3. Then, in this case, Elizabeth filed a motion to compel the document's production (which also sought the entire confidential attorney file of decedent Robert Parman).

4. This Court granted the motion to strike and seal (in both cases) because the document was protected information under RPC 1.6, no exceptions to RPC 1.6 applied which would allow its production to Bartlett, and it was improperly obtained in the first place.

5. This Court also denied the motion to compel, finding no basis to compel production of the document (which Bartlett already possessed, albeit improperly), and no basis to compel production of anything else from the file.

6. Here, if Bartlett's counsel did not know that the document came from a confidential file, having solicited it directly from Robert Parman's former attorneys (or his former attorneys' successor firm), he certainly knew on January 10, 2022, when Shawn Parman filed his motion to strike/seal in both cases.

7. Rather than return, sequester, or destroy the document (CR 26(b)(6)), Bartlett filed it two more times in [the] *Estate of Robert Parman* case, and also in this case, and also filed her motion to compel the document's production.

CP at 1443-44.

5.      Second Motion for Partial Summary Judgment (Breach of Contract)

In March 2022, the Parmans moved for partial summary judgment, requesting dismissal of

Elizabeth's breach of contract claim. The Parmans argued that Elizabeth had insufficient material

13

and admissible facts to prevail on her breach of contract claim. Elizabeth pointed to Ruth's deposition testimony as establishing the needed evidence of an oral contract.

During hearing on the motion, the superior court stated that "the threshold question is whether there is clear, cogent, and convincing evidence to establish a contract and meeting of the minds." VRP (May 6, 2022) at 31. The superior court determined that any testimony by Elizabeth describing statements that Ruth, or Ruth and Robert, had made to her in the past were precluded by the Deadman's Statute. The superior court ruled that evidence of Elizabeth's subjective intent provided context, but it was not proof of the existence of a contract, and that there was no evidence based on Ruth's statements that there was a contract. The superior court granted the motion for partial summary judgment on the breach of contract claim, finding that there was no genuine issue of material fact in light of the lack of "competent evidence" establishing an agreement. VRP (May 6, 2022) at 33.

### 6. Motion in Limine

In May 2022, the Parmans filed a motion in limine, seeking exclusion of evidence of promises of inheritance that Ruth and Robert made to Elizabeth and evidence relating to loss of prospective inheritance. During the hearing on the motion, the Parmans argued that the Statute of Frauds precluded evidence of any promises to devise, and promissory estoppel—one of Elizabeth's remaining claims—could not be used to overcome the Statute of Frauds. The Parmans also argued that if the superior court disagreed with the Statute of Frauds analysis, the Deadman's Statute still precluded evidence of transactional statements Ruth or Robert made to Elizabeth.

The superior court agreed that the Deadman's Statute precluded Elizabeth from testifying about any transactions with Robert or Ruth. The superior court also agreed that any deposition

testimony from Ruth about Elizabeth and Shawn someday inheriting the Renata Lane Property should be excluded to the extent it is offered in support of the promissory estoppel claim. The superior court stated, "[I]t's evidence of an oral promise and the statute of frauds precludes that." VRP (May 27, 2022) at 53. The court's written order precluded the parties from testifying about transactions with Robert or Ruth and from presenting evidence at trial about statements or promises made by Robert or Ruth to devise real property to Elizabeth.

 7. Motion for Summary Judgment and Attorney Fees

In late May 2022, the Parmans offered to stipulate to the amount of damages Elizabeth believed she was owed for her outstanding unjust enrichment claim, i.e., funds she expended from 2015 to 2018. Elizabeth responded that her damages amounted to $1,281 and stated that she would be willing to discuss stipulation. The Parmans then sent Elizabeth a check for $1,281 "in satisfaction of the unjust enrichment claim," and also requested that Elizabeth cancel the lis pendens on the Renata Lane Property. CP at 1766. Elizabeth returned the check and declined to cancel the lis pendens, opting to wait until trial.

In July 2022, the Parmans moved for summary judgment, requesting dismissal of Elizabeth's remaining claims: unjust enrichment after 2015, promissory estoppel, and tortious interference with business expectancy or contract. The Parmans' motion also requested an order to quiet title.

During the hearing on the motion, the Parmans argued in part that Elizabeth's interference claim was actually a claim of intentional interference with *inheritance* expectancy, which is not a tort recognized in Washington, and even so, Elizabeth should have mounted a will challenge when

Ruth's estate was probated. Elizabeth argued that her tortious interference claim was not a will contest claim; rather, the claim was against Shawn for damages as a tortfeasor.

The superior court viewed Elizabeth's interference claim against Shawn as one of exerting undue influence on Ruth to persuade Ruth to change her will. The superior court reasoned that regardless of the legal theories presented, and whether the tort was business expectancy or inheritance expectancy, Elizabeth's claim was really a direct challenge to Ruth's will and "it's not allowed in a circumstance where there is an adequate probate remedy." VRP (Sept. 9, 2022) at 36. The superior court granted summary judgment on the tortious interference claim. The superior court also granted summary judgment on the promissory estoppel claim in light of the fact that it had previously ruled that the evidence supporting the promissory estoppel claim was inadmissible.

With regard to the Parmans' counterclaim to quiet title, the Parmans argued that based on the superior court's dismissal of Elizabeth's various claims—with the exception of the remaining unjust enrichment claim for which they had already tendered a check—the superior court should hold "that there is no remaining basis for [Elizabeth] to have a legal or equitable claim in the property, that the quitclaim deed on its face transferred ownership to the senior Parmans, and . . . that the [superior] court quiet title in the current legal title named party." VRP (Sept. 9, 2022) at 40.

The superior court initially reserved on the quiet title issue in light of the remaining unjust enrichment claim. Because the claim that would go to the jury was only for $1,281, Elizabeth offered to have the issue dismissed as "there's no reason to spend time in a jury trial over $1,281." VRP (Sept. 9, 2022) at 42. The superior court accepted Elizabeth's offer, dismissed all claims, and quieted titled in favor of Shawn.

16

The Parmans moved for attorney fees and costs pursuant to RCW 11.96A.150. The superior court found that Elizabeth's creditor's claim filed in Ruth's probate expressly referenced the complaint against the Parmans, and therefore, it was equitable to award the Parmans their attorney fees and costs. The superior court awarded the Parmans a total of $51,237.14 in attorney fees and costs.

Elizabeth appeals. The Parmans cross-appeal the trial court's order denying the motion to cancel the lis pendens.

## ANALYSIS

Elizabeth appeals nine orders from the superior court that culminated in summary judgment dismissal of her claims against the Parmans. We address Elizabeth's appeals order by order and claim by claim.

A.  SUMMARY JUDGMENT

We review summary judgment orders de novo. *Greensun Grp., LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 767, 436 P.3d 397, *review denied*, 193 Wn.2d 1023 (2019). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). For summary judgment purposes, a material fact is one that affects the outcome of the litigation. *Walter Dorwin Teague Assocs., Inc. v. Dep't of Revenue*, 20 Wn. App. 2d 519, 524, 500 P.3d 190 (2021), *review denied*, 199 Wn.2d 1013 (2022). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). We view "all facts and reasonable inferences in the light most favorable to

the nonmoving party." *Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

A nonmoving party may avoid summary judgment if it sets forth "'specific facts which sufficiently rebut the moving party's contentions.'" *Ranger Ins. Co.*, 164 Wn.2d at 552 (quoting *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986)). However, the nonmoving party "is not permitted to rely on speculation or argumentative assertions" to overcome summary judgment. *Mason v. Mason*, 19 Wn. App. 2d 803, 820, 497 P.3d 431 (2021), *review denied*, 199 Wn.2d 1005 (2022). Further, "[c]onclusory statements of fact are insufficient to defeat a summary judgment motion." *Hamblin v. Castillo Garcia*, 23 Wn. App. 2d 814, 831, 517 P.3d 1080 (2022), *review denied*, 200 Wn.2d 1029 (2023).

B.     DECEMBER 2021 MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO MODIFY

Elizabeth challenges the superior court's December 2021 Order. In its December 2021 Order, the superior court dismissed on partial summary judgment Elizabeth's claims for misrepresentation,[10] unjust enrichment "as to any and all alleged improvements to the Renata Lane Property completed before June 27, 2015," and joint venture/partnership. CP at 2301. Elizabeth also challenges the superior court's denial of Elizabeth's motion to modify the December 2021 order.

---

[10] Elizabeth does not assign error to or appeal the superior court's dismissal of her claim of misrepresentation against Ruth's estate. Accordingly, we do not address the misrepresentation claim. *See Mullor v. Renaissance Ridge Homeowners' Ass'n*, 22 Wn. App. 2d 905, 918-19, 516 P.3d 812 (2022) ("If an appellant fails to raise an issue in the assignments of error and fails to present any argument on the issue in their brief, we generally will not consider the merits of that issue."), *review denied*, 200 Wn.2d 1025 (2023).

1.    Summary Judgment Dismissal of Unjust Enrichment Claim

Elizabeth argues that the superior court erred when it applied a three-year statute of limitations to her unjust enrichment claim. Specifically, Elizabeth argues that her claim did not accrue until Ruth's alleged enrichment became "unjust," which occurred in September 2017, when Ruth removed Elizabeth from her will. 2nd Amend. Br. of Appellant at 28 (emphasis omitted). The Parmans argue that Elizabeth's claim of unjust enrichment for any improvements she made prior to 2015 is untimely based on the statute of limitations. We agree with Elizabeth.

a.    Legal principles

Unjust enrichment "represents a type of implied contract between the plaintiff and the defendant." *Lavington v. Hillier*, 22 Wn. App. 2d 134, 143, 510 P.3d 373, *review denied*, 200 Wn.2d 1010 (2022). It is a method of recovery that allows a plaintiff to recover the value of a benefit that the defendant retained, based on notions of equity and fairness. *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).

In order to prevail on an unjust enrichment claim, one must show "'(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment.'" *Lavington*, 22 Wn. App. 2d at 144 (emphasis omitted) (quoting *Young*, 164 Wn.2d at 484-85); *accord Eckert v. Skagit Corp.*, 20 Wn. App. 849, 851, 583 P.2d 1239 (1978) ("An action for unjust enrichment lies in a promise implied by law that one will render to the person entitled thereto that which in equity and good conscience belongs to that person."). Enrichment on its own will not trigger the doctrine; rather "the enrichment must be unjust under the circumstances and as between the two parties to

the transaction." *Dragt v. Dragt/DeTray, LLC*, 139 Wn. App. 560, 576, 161 P.3d 473 (2007), *review denied*, 163 Wn.2d 1042 (2008).

Actions for unjust enrichment must be commenced within three years. RCW 4.16.080(3); *Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 737, 197 P.3d 686 (2008) (stating "the statute of limitations applicable to a common law cause of action for unjust enrichment . . . is three years"). The statute of limitations begins to run when a party's cause of action accrues, which occurs "'when the party has the right to apply to a court for relief.'" *Flynn v. Pierce County*, 16 Wn. App. 2d 721, 727, 482 P.3d 980 (2021) (quoting *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575, 146 P.3d 423 (2006)). Generally, "[a] party has the right to apply to a court for relief when it 'can establish each element of the action.'" *Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*, 197 Wn. App. 875, 892, 391 P.3d 582 (2017) (internal quotation marks omitted) (quoting *Shepard v. Holmes*, 185 Wn. App. 730, 739, 345 P.3d 786 (2014)). Courts review the application of the statute of limitations de novo. *In re Gilbert Miller Testamentary Credit Shelter Tr.*, 13 Wn. App. 2d 99, 104, 462 P.3d 878 (2020).

### b. Elizabeth's pre-2015 claims are timely

The parties do not dispute that the three-year timeline provided in RCW 4.16.080(3) is the applicable statute of limitations. Elizabeth argues that her cause of action accrued when Ruth's retention of the benefit became "unjust," or in other words, when Ruth removed Elizabeth from her will in 2017. 2nd Amend. Br. of Appellant at 28 (emphasis omitted). The Parmans argue that the cause of action accrued when the enrichment occurred, not based on later events that may make the enrichment "seem unjust." Br. of Resp't/Cross-Appellant at 30.

In her complaint, Elizabeth itemizes the funds she expended on the Renata Lane Property from 2001 to 2017. With the exception of two expenditures in 2016 and 2017, all other expenditures occurred in or prior to 2011. While the Parmans assert that Elizabeth had a right to apply to a court for relief with each improvement, this argument fails. Conferring a benefit alone does not trigger a cause of action for unjust enrichment—retention of the benefit must be unjust in the circumstances. *Dragt*, 139 Wn. App. at 576.

Here, Elizabeth conferred the benefit of the property improvements to Ruth between 2001 and 2017, before Ruth changed her will. Elizabeth conferred the benefit in reliance on the fact that she would later inherit 50% of the Renata Lane Property after Ruth passed away. Ruth's retention of the benefit when Elizabeth conferred it was not unjust because Elizabeth was set to inherit an interest in the property. Ruth's retention of the benefit only became unjust when she changed her will in 2017, removing Elizabeth from her will completely. Accordingly, it was not until 2017 that Elizabeth could establish the elements of unjust enrichment and her cause of action accrued. *See Deegan*, 197 Wn. App. at 892.

There is no dispute that Elizabeth filed her complaint in June 2018, less than one year after Ruth changed her will in September 2017. Because the statute of limitations for unjust enrichments actions is three years, Elizabeth's claim of unjust enrichment for the improvements she made to the property pre-2015 is timely as a matter of law. RCW 4.16.080(3). Thus, the superior court erred when it dismissed Elizabeth's claim of unjust enrichment on summary judgment based on the statute of limitations.

2.      Summary Judgment Dismissal of Joint Venture/Partnership Claim

Elizabeth argues that the superior court erred when it dismissed her claim of breach of joint venture/partnership because Elizabeth should have brought the claim within 24 months of Robert's passing. Specifically, Elizabeth asserts that even if the non-claim statute was applicable, it would only bar actions against Robert as the deceased, and furthermore, "Robert's death did not dissolve the joint venture." 2nd Amend. Br. of Appellant at 35. We agree that the superior court erred when it dismissed Elizabeth's claim on the basis of the nonclaim statute; however, we hold that dismissal was still appropriate because Elizabeth cannot establish the existence of a joint venture.[11]

a.      Legal principles

A joint venture is a form of partnership. *Penick v. Emp't Sec. Dep't*, 82 Wn. App. 30, 40, 917 P.2d 136, *review denied*, 130 Wn.2d 1004 (1996). "Consequently, partnership law generally applies to joint ventures." *Pietz v. Indermuehle*, 89 Wn. App. 503, 510, 949 P.2d 449 (1998); *see generally* RCW 25.05.

A joint venture has four elements: "(1) a contract, express or implied; (2) a common purpose; (3) a community of interest; and (4) an equal right to a voice and to control." *Penick*, 82 Wn. App. at 40. The party asserting joint venture or partnership has the burden of proving its

---

[11] In its dismissal of Elizabeth's joint venture claim, the superior court stated that "any breach of that joint venture or not acting on it should have been raised against [Robert's] estate within 24 months of Robert Parman's passing away under the non-claim statute." VRP (Dec. 10, 2021) at 33. The superior court did not cite a specific statute other than the "non-claim statute." VRP (Dec. 10, 2021) at 33. This opinion assumes, as did Elizabeth in her brief, the superior court was referencing RCW 11.40.051(1)(c), which states that a "creditor must present [a] claim within twenty-four months after the decedent's date of death."

existence. *DeFelice v. Emp't Sec. Dep't*, 187 Wn. App. 779, 788, 351 P.3d 197 (2015). "Just because the parties call their arrangement a partnership does not make it a partnership." *Id.*

        b.      No joint venture/partnership

Elizabeth argues there are "material issues of disputed fact" as to whether a joint venture existed after 2000 and after Robert's death. 2nd Amend. Br. of Appellant at 37. She requests that we reverse dismissal and remand her joint venture claim to the superior court to determine the existence of a joint venture.

Here, in 1998, Robert, Ruth, Shawn, and Elizabeth agreed to build a home together on the Renata Lane Property where both couples, along with Shawn and Elizabeth's sons, would live. However, in 2000, Shawn and Elizabeth conveyed the Renata Lane Property to Robert and Ruth via quitclaim deed. Shawn and Elizabeth simultaneously signed the JV Agreement.

The JV Agreement explicitly stated that Robert, Ruth, Shawn, and Elizabeth had initially entered into a joint venture, but

> it is agreed that this joint venture *shall be terminated* and in exchange for completing the property and funding the same to completion, and holding Shawn and Elizabeth Parman harmless from any financial responsibility, Shawn and Elizabeth Parman will quit claim all right, title and interest in the subject property to Ruth and Robert Parman as their sole and separate property and *this joint venture will then be dissolved*.

CP at 107 (emphasis added). The record clearly shows that to the extent that a joint venture existed between Robert, Ruth, Shawn, and Elizabeth, at the very least, Shawn and Elizabeth agreed[12] to

---

[12] Neither Robert nor Ruth signed the JV agreement. But, as stated above, the record shows that Elizabeth signed the JV agreement, which evidences her intent to dissolve the JV agreement.

terminate that joint venture in 2000 when they conveyed the Renata Lane Property to Robert and Ruth via quitclaim deed per the terms of the JV Agreement that they both signed.

Elizabeth contends that the JV Agreement, despite purporting to *dissolve* the joint venture, was actually an "explicit understanding" between the parties to combine resources and share expenses, with the ultimate goal of either Robert or Ruth conveying 50% of the property back to her after they both passed away. CP at 5. However, even setting aside the issue of admissibility of Ruth's testimony regarding any agreement or "explicit understanding," the record is devoid of any evidence that Ruth possessed the same "common purpose" as Elizabeth. *See Penick*, 82 Wn. App. at 40. Indeed, Ruth stated during a deposition she only agreed to the arrangement "to keep the family together." CP at 479. "Just because the parties call their arrangement a partnership does not make it a partnership." *DeFelice*, 187 Wn. App. at 788. Further, conclusory statements of fact cannot defeat a summary judgment motion. *Hamblin*, 23 Wn. App. 2d at 831. Additionally, Ruth stated that her understanding of Shawn's and Elizabeth's payment of one half of the mortgage, insurance, and utilities was not a true agreement to pay one half of all expenses; rather, those payments were merely "contributions toward them living" on the property and that Shawn and Elizabeth only contributed "what they felt they could afford." CP at 480-81.

Moreover, the record shows that Elizabeth repeatedly asked Ruth to put her back on the deed to the property, which Ruth rejected. This suggests that there was not equal voice or right to control between Ruth, Shawn, and Elizabeth. The fact that Elizabeth asked to be put back on the property title and that Ruth refused not only implies unequal control, but also begs the question whether Elizabeth truly believed a joint venture existed as she claims. Because Elizabeth cannot rebut the Parmans' contentions with more than conclusory statements that a joint venture existed,

Elizabeth's breach of joint venture claim fails as a matter of law. Thus, the superior court did not err in dismissing the breach of joint venture claim.

### 3. Motion to Modify

Elizabeth also appeals the superior court's order denying her motion to modify the superior court's December 2021 Order dismissing her unjust enrichment and joint venture claims. A superior court has the authority to modify or revise an order any time prior to final judgment. *Dewitt v. Mullen*, 193 Wn. App. 548, 559, 375 P.3d 694 (2016); CR 54(b).

For the reasons stated above, the superior court erred when it denied the motion to modify its summary judgment dismissal of Elizabeth's pre-2015 unjust enrichment claims based on the statute of limitations. However, the superior court did not err in denying the motion to modify its December 2021 Order as to Elizabeth's joint venture claim.

## C. MOTION TO COMPEL, MOTION TO SEAL, AND CR 37(A)(4) ATTORNEY FEES

### 1. Motion to Compel

Elizabeth argues that the superior court erred in denying Elizabeth's motion to compel the production of the copy of Robert's 2004 will. Elizabeth appears to assert two grounds on which the superior court erred: "there was no applicable privilege which would preclude production of the will" and the superior court abused its discretion in denying the motion to compel because it cited no legal authority for its decision. 2nd Amend. Br. of Appellant at 55. We disagree.

#### a. Legal principles

Under CR 26(b)(1), parties may obtain discovery of nonprivileged matter "which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Additionally,

if the information is subject to a claim of privilege, "the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; and must take reasonable steps to retrieve the information if the party disclosed it before being notified." CR 26(b)(6).

Under CR 37(a), a party may apply to the trial court for an order compelling discovery. We review a trial court's discovery orders for abuse of discretion. *Diaz v. Wash. State Migrant Council*, 165 Wn. App. 59, 73, 265 P.3d 956 (2011). A trial court abuses its discretion when its decision is unreasonable or based on untenable grounds. *Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co.*, 176 Wn. App. 168, 183, 313 P.3d 408 (2013), *review denied*, 179 Wn.2d 1019 (2014).

RPC 1.6 pertains to client confidentiality. This rule of conduct provides that an attorney shall not reveal information that relates to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized to further the client's representation, or the disclosure is permitted by one of several enumerated circumstances. RPC 1.6(a). For instance, an attorney may reveal information that relates to client representation in order to comply with a court order. RPC 1.6(b)(6). The confidentiality rule works in conjunction with attorney-client privilege and the work product doctrine, and generally pertains to circumstances "other than those where evidence is sought from the lawyer through compulsion of law." RPC 1.6 cmt. 3.

b.      No abuse of discretion in denying motion to compel

Here, Elizabeth moved to compel Althauser Rayan & Abbarno to comply with her subpoena, "ordering it to produce for inspection and copying the will files of Robert Parman and

Ruth Parman, including the will of Robert Parman, who died in 2005." CP at 729. During the hearing on the motion to compel, Young clarified that the motion was primarily to compel production of Robert's will. Young further stated that despite already possessing a copy, he filed the motion to compel only "to eliminate the . . . false issue that [the Parmans] raise that [he] acquired it illegitimately." VRP (Jan. 28, 2022) at 12.

The superior court noted, "[W]hat I understand the motion to compel is *for a copy of the will* which exists in the Rayan firm's larger file. We have [Althauser Rayan & Abbarno] saying under oath that there is no original will in that file, and the rest of the file is the client file from the representation of Mr. Robert Parman before he passed away." VRP (Jan. 28, 2022) at 36 (emphasis added). In both its oral ruling and written order, the superior court cited RPC 1.6 as the basis of its denial. Therefore, Elizabeth's argument that the superior court did not provide a basis for its decision to deny her motion to compel is not supported by the record.

The superior court is correct that RPC 1.6 broadly governs Althauser Rayan & Abbarno's client files and what it may disclose regarding its representation of Ruth and Robert in their estate planning. However, we need not determine whether RPC 1.6 applies to disclosure of a particular document that does not appear to be privileged either through attorney-client privilege or the work product doctrine[13] because in her briefing, Elizabeth argues that the superior court erred only to the extent that it did not compel production of the *copy of Robert's will*. Elizabeth presents no argument as to production of Ruth's and Robert's estate planning files.

---

[13] We note that other rules of professional conduct, such as RPC 4.1 and RPC 4.4, may be implicated here.

Elizabeth's purpose in moving to compel—as stated to the superior court by Young—is as an attempt to legitimize potentially questionable actions on the part of Young. Moreover, Elizabeth *already possessed* a copy of the document she wanted to compel production of. And, during the motion hearing, Young explicitly stated he was primarily interested in compelling production of Robert's will copy. Because Elizabeth already had a copy of Robert's will, her motion to compel production of it becomes duplicative and unnecessary. A court may limit discovery if "the discovery sought is unreasonably cumulative or duplicative." CR 26(b)(1)(A). We may affirm a superior on any grounds supported by the record, even if it was not considered below. *Eubanks v. Klickitat County*, 181 Wn. App. 615, 619, 326 P.3d 796, *review denied*, 181 Wn.2d 1012 (2014). Therefore, we hold that the superior court did not abuse its discretion and affirm the superior court's denial of the motion to compel.

2. Motion to Seal Robert's Will Copy

Elizabeth argues that the superior court erred in sealing the copy of Robert's will because sealing was not justified under GR 15. We disagree.

a. Legal principles

To seal a document means to protect it "from examination by the public and unauthorized court personnel." GR 15(b)(4). A court may order a document be sealed if it makes and enters written findings that the sealing "is justified by identified compelling privacy or safety concerns that outweigh the public interest in access to the court record." GR 15(c)(2). The court may identify "compelling circumstances" other than specific privacy or safety concerns that "requires the sealing." GR 15(c)(2)(F).

Generally, a superior court's decision to seal a record is reviewed for an abuse of discretion. *State v. Cofield*, 1 Wn. App. 2d 49, 54, 403 P.3d 943 (2017). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds." *Culinary Ventures, Ltd v. Microsoft Corp.*, 26 Wn. App. 2d 396, 403, 527 P.3d 122, *review denied*, 1 Wn.3d 1029 (2023). If a trial court's decision is based on incorrect legal analysis or an erroneous view of the law, it necessarily abuses its discretion. *Id.*

Courts operate with a presumption of openness, but certain court records may be sealed to protect significant or fundamental rights. *Rufer v. Abbott Lab'ys*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005). To balance the presumption of openness with the protection of other rights, courts apply the *Ishikawa*[14] factors when considering motions to seal.[15] *Dreiling v. Jain*, 151 Wn.2d 900, 913, 93 P.3d 861 (2004). Those factors are: (1) the proponent of sealing must make a showing of the need to seal; (2) anyone present at the motion hearing must be given opportunity to object; (3) the court should analyze whether sealing is both the "least restrictive means available and effective in protecting the interests threatened"; (4) the court must weigh the interests of the party and the public; and (5) any order to seal must apply to a specific time period "with a burden on the

---

[14] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982).

[15] Courts also distinguish between sealing of discovery and sealing of materials in support of dispositive motions or other documents upon which a trial court bases its decision. *Dreiling v. Jain*, 151 Wn.2d 900, 909-10, 93 P.3d 861 (2004). "Mere discovery may be sealed 'for good cause shown.'" *Id.* (quoting CR 26(c)). Arguably, Robert's will copy was discovery material because no determination had yet been made as to its relevancy or admissibility. The superior court had noted, "[A] [will] copy is just a copy. It does not establish that a will existed at the time of death." VRP (Jan. 28, 2022) at 37. However, when the Parmans moved to seal the copy of Robert's will, they did not move for a protective order pursuant to CR 26(c); instead, the Parmans cited GR 15 and the *Ishikawa* factors. Therefore, we address GR 15 and the *Ishikawa* factors.

proponent to come before the court at a time specified to justify continued sealing." *Ishikawa*, 97 Wn.2d at 37-39.

            b.        No abuse of discretion in granting motion to seal

Elizabeth argues that two of the five *Ishikawa* factors were not properly evaluated by the superior court when it considered the Parmans' motion to seal: factors (1) and (4). We disagree.

The record shows that the superior court addressed each of the *Ishikawa* factors. First, the superior court found that the specific copy of Robert's will came from Althauser Rayan & Abbarno's confidential client file and that the entire file is subject to RPC 1.6. Second, the superior court afforded all parties present at the motion hearing the opportunity to object or express support for sealing Robert's will copy. Third, the superior court then discussed that because the will copy came from a confidential client file that contained information relating to Althauser Rayan & Abbarno's representation of Robert, sealing the will was the "least restrictive alternative" to maintain the confidentiality of Robert's client file under RPC 1.6. VRP (Jan. 28, 2022) at 35. Fourth, the superior court noted that the disclosure of Robert's will copy occurred through circumstances "not contemplated" by RPC 1.6, and, indeed, was actually obtained in violation of the RPCs. VRP (Jan. 28, 2022) at 35. Therefore, the public would not normally have access to such a document, and Robert's interest in the confidentiality of his file overrides any interest the public may have. And finally, the superior court stated that "the question of whether a copy of a will serves some evidentiary purpose, especially in light of the circumstances within which that copy was received, is something that I could be persuaded on at a later time." VRP (Jan. 28, 2022) at 36.

Here, the record shows that the superior court did not apply incorrect legal analysis or take an erroneous view of the law. Indeed, the superior court explicitly walked through the *Ishikawa* factors. Accordingly, the superior court did not abuse its discretion. Thus, the superior court did not err in sealing the copy of Robert's will.

3.      CR 37(a)(4) Attorney Fees

Elizabeth argues that the superior court erred when it awarded attorney fees to the Parmans under CR 37(a)(4). Elizabeth asserts the award was "improperly based" on findings of fact that she disputes. 2nd Amend. Br. of Appellant at 57. We disagree.

a.      Legal principles

Under CR 37(a)(4), if a court denies a motion to compel, the court shall,

> after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

We review attorney fees awards for abuse of discretion. *Dalsing v. Pierce County*, 190 Wn. App. 251, 261, 357 P.3d 80 (2015). "Attorney fees awarded under CR 37 will not be disturbed on appeal except upon a clear showing of abuse of discretion." *Id.*

b.      Superior court properly awarded attorney fees

Here, Elizabeth moved to compel production of a copy of Robert's will. For the reasons stated above, the superior court did not abuse its discretion when it denied the motion to compel because Elizabeth's motion was not substantially justified. The superior court explained that there was a dispute as to how Elizabeth obtained a copy of the will and that Elizabeth repeatedly filed a copy of the will in both the current action and in her action against Robert's estate, even after the

31

Parmans filed their motion to strike/seal, and Elizabeth already possessed a copy of the will. The superior court also stated that Elizabeth never provided a legal basis for the court to grant the motion to compel.

The record supports the superior court's position: the record shows that Elizabeth possessed a copy of the will prior to moving to compel. The record also shows that Elizabeth filed a copy of the will again *after* the Parmans filed their motion to strike/seal, when she should have held off from doing so until the issue was resolved. CR 26(b)(6). Finally, Elizabeth does not argue in her briefing why her motion was substantially justified. She mentions briefly that compelling the will copy would authenticate it[16] but focuses her argument on why the Parmans were not justified in moving to strike or seal the will copy. Elizabeth presumes that her reasoning—that the will copy was relevant and that it was not protected by attorney-client privilege—is the substantial justification. But, again, Elizabeth advances no argument as to why her motion was justified, particularly when she already had a copy of the will and Young's stated purpose in filing the motion was only "to eliminate . . . the false issue that [the Parmans] raise that [he] acquired it illegitimately." VRP (Jan. 28, 2022) at 12.

As discussed above, Elizabeth's motion to compel, in light of the circumstances, was an unnecessary motion. Because Elizabeth's motion was denied and because she presents no argument as to why her motion was substantially justified, we hold the superior court properly awarded attorney fees to the Parmans under CR 37(a)(4).

---

[16] Elizabeth says nothing of the will copy's ultimate admissibility, only that a court order compelling the will copy could "lead to the discovery of admissible evidence." 2nd Amend. Br. of Appellant at 65.

D.      MAY 2022 PARTIAL MOTION FOR SUMMARY JUDGMENT (BREACH OF CONTRACT)

Elizabeth argues the superior court erred "as a matter of law" when it determined "there was no competent evidence establishing an agreement to devise" and dismissed her breach of contract claim on summary judgment.  2nd Amend. Br. of Appellant at 30.  Elizabeth contends that, based on the "totality of the . . . evidence" and Ruth's deposition testimony, she can prove the elements of an oral contract to devise with "a high probability."  2nd Amend. Br. of Appellant at 34.  We disagree.

1.      Legal Principles

A party who asserts the existence of an express or implied contract bears the burden of proving the essential elements of the contract.  *Bale v. Allison*, 173 Wn. App. 435, 453, 294 P.3d 789 (2013).  To establish an oral contract to devise, the party must prove: "(1) the decedent agreed to will or leave the claimant certain property, (2) the services contemplated as consideration for the agreement were actually performed, and (3) the services were performed in reliance on the agreement."  *Id.*  Statements of intent alone do not necessarily support the existence of a contract to devise.  *Id.*  A will's failure to mention a contract implies there was no contract.  *Thompson v. Henderson*, 22 Wn. App. 373, 378, 591 P.2d 784 (1979).  Later execution of a new will is also evidence of the absence of a contract.  *Id.* at 377.

"[O]ral agreements to devise 'are not favored, are regarded with suspicion, and will be enforced only upon the strongest evidence.'"  *Portmann v. Herard*, 2 Wn. App. 2d 452, 462, 409 P.3d 1199 (2018) (quoting *Cook v. Cook*, 80 Wn.2d 642, 644, 497 P.2d 584 (1972)).  Also, "[w]hile equity will recognize oral contracts to devise, they are not favored and will be enforced only upon

very strong evidence that the promise was made in exchange for valuable consideration and deliberately entered into by the decedent." *Bale*, 173 Wn. App. at 453.

To avoid summary judgment, the party claiming the contract to devise "must present 'substantial evidence objectively manifesting that the decedent recognized the agreement as existing during his lifetime.'" *Portmann*, 2 Wn. App. 2d at 462 (quoting *Cook*, 80 Wn.2d at 646). To that end, "the evidence must establish to a high probability that the claimed agreement existed." *Id.* Courts view the "high probability" standard the same as the "clear, cogent, and convincing" standard. *Id.*

Evidence offered in opposition to a motion for summary judgment must be admissible. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 141, 331 P.3d 40 (2014). While evidentiary rulings are typically reviewed for abuse of discretion, "we review de novo a trial court's evidentiary rulings made in conjunction with a summary judgment motion." *Portmann*, 2 Wn. App. 2d at 463.

Reciprocal wills are similar or identical wills. *Id.* at 462. "'[R]eciprocal wills, although executed simultaneously, do not in themselves constitute evidence of a contract to execute [mutual][17] wills and keep them in effect.'" *Id.* (some alterations in original) (quoting *Dahlgren v. Blomeen*, 49 Wn.2d 47, 50, 298 P.2d 479 (1956)).

RCW 5.60.030, known as the Deadman's Statute, provides in pertinent part:

> No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: PROVIDED,

---

[17] Mutual wills are two wills executed pursuant to an agreement between two individuals regarding the ultimate disposition of their property after both individuals are deceased. *Portmann*, 2 Wn. App. 2d at 461. "The legal effect of mutual wills is that when one of the individuals dies and the survivor accepts the benefits conferred by the deceased's will, the survivor is bound to dispose of his or her property as previously agreed." *Id.*

HOWEVER, That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . person.

The purpose of RCW 5.60.030 "is to prevent interested parties from giving self-serving testimony regarding conversations and transactions with the deceased because the dead cannot respond to unfavorable testimony." *Parks v. Fink*, 173 Wn. App. 366, 375, 293 P.3d 1275, *review denied*, 177 Wn.2d 1025 (2013). The test to determine whether certain testimony is covered by the Deadman's Statute "is whether the deceased, if living, could contradict the witness of his own knowledge." *Kellar v. Estate of Kellar*, 172 Wn. App. 562, 574, 291 P.3d 906 (2012), *review denied*, 178 Wn.2d 1025 (2013). An interested party may, however, testify as to his or her own acts or feelings and impressions, so long as the testimony does not concern a specific transaction or statement made by the decedent. *Id.* at 574-75.

2.      Superior Court Did Not Err

The superior court dismissed Elizabeth's breach of contract claim based on Elizabeth's inability to prove with competent evidence the first element of a contract to devise—in other words, whether Ruth agreed to leave Elizabeth 50% of the Renata Lane Property.

In her briefing, Elizabeth points to four pieces of evidence that she asserts constitute competent evidence of an agreement to devise: (1) Ruth's statement to Elizabeth and Shawn in 2000 that they would be in her will; (2) Ruth's statement that she and Robert had told Shawn and Elizabeth that "'[t]he property will be yours and Shawn's when Bob and I die, and then we want you to take care of the boys from that'"; (3) that Robert and Ruth signed parallel wills each leaving

Elizabeth 50% of the property after the second to die; and (4) Elizabeth's own testimony about her interactions and discussions with Robert about the property. 2nd Amend. Br. of Appellant at 31 (quoting CP at 493).

Here, Ruth's statements are statements of intention—Ruth was simply stating what she had previously told Shawn and Elizabeth and her intention at the time. Statements of intent do not necessarily support the existence of a contract to devise. *Bale*, 173 Wn. App. at 453. Even viewing the statements in a light most favorable to Elizabeth, the statements speak only to whether Elizabeth would inherit from Ruth's will and do not evidence an explicit *agreement* that Elizabeth would receive 50% of the Renata Lane Property. Indeed, other statements from Ruth—regarding the sharing of expenses, for instance—tend to indicate no contract existed. As the superior court correctly noted, in her deposition, Ruth "denies or doesn't describe in detail a quid pro quo consideration, you do this and we'll do this." VRP (May 6, 2022) at 32.

Next, Elizabeth argues that Robert's and Ruth's parallel 2004 wills are evidence of an "'agreement.'" 2nd Amend. Br. of Appellant at 31 (quoting *Bale*, 173 Wn. App. at 455). However, Ruth and Robert executed reciprocal wills in 2004. *See Portmann*, 2 Wn. App. 2d at 462. Reciprocal wills do not evidence a contract to execute mutual wills and keep them in effect. *Id*. Furthermore, neither Ruth's nor Robert's 2004 wills mention a contract or explicit agreement, either between themselves or with Elizabeth. *Thompson*, 22 Wn. App. at 378. Indeed, the fact that Ruth executed a new will in 2017 is evidence that no contract existed. *Id*. at 377.

Finally, Elizabeth assigns error to the superior court's decision to bar her testimony about her interactions with Robert based on the Deadman's Statute. Elizabeth argues that Robert is not a party to the current action; therefore, any testimony about Elizabeth's transactions or

conversations with Robert regarding the property do not fall within the Deadman's Statute. The Parmans argue that Elizabeth's "testimony regarding what Robert said about the contract is testimony about a transaction with Ruth since it is alleged that both Robert and Ruth were parties to the agreement," so the Deadman's Statute applies. Br. of Resp't/Cross-Appellant at 45.

Here, under the Deadman's Statute, the "adverse party" is Shawn, as personal representative for Ruth, defending an action against Ruth's estate. *See* RCW 5.60.030. Elizabeth is the "party in interest." *See* RCW 5.60.030. The statute is clear that Elizabeth may not testify about transactions or conversations she had with Ruth. However, neither Robert nor his estate, though related to this proceeding, are a party to this action. Shawn is not defending in this action as Robert's personal representative. Therefore, any evidence of conversations or transactions Elizabeth had with Robert regarding an agreement she had *with him alone* do not fall within the purview of the Deadman's Statute.[18] Nevertheless, to the extent that any of the conversations that Elizabeth had with Robert implicate conversations or transactions Elizabeth had with Ruth, and what Robert and Ruth planned together, it functionally becomes testimony or evidence of what Ruth may have said or agreed to and evidence that she is not present to contradict with her own testimony. *Kellar*, 172 Wn. App. at 574.

Elizabeth points to a supplemental declaration in the record in which she discusses specific conversations she had with Robert regarding the alleged agreement. However, Elizabeth's statements included: "I have had numerous conversations with Robert Parman regarding the agreement *we all had*"; "[Robert] agreed that in connection with the quitclaim deed from Shawn

---

[18] Because this is a proceeding against *Ruth*, or her estate, the relevancy of anything Robert may have said 20 years ago is questionable, even if an agreement had existed at that time.

and me to him and Ruth, when *he and Ruth* died, I would inherit 50% of the Renata Lane Property";

and "I have no doubt from [Robert's] statements to me that I would be in his will, based on his

agreement on the *plans everyone had* to live together." CP at 1524, 1526 (emphasis added). These

statements implicate Ruth's statements and transactions, which are barred by the Deadman's

Statute. Ruth cannot contradict these statements with her own testimony. Therefore, we hold that

the superior did not abuse its discretion in precluding evidence of Robert's statements about the

agreement.

Because Elizabeth did not offer competent evidence to create a genuine issue of material

fact of the first element of a contract to devise, we hold that the superior court did not err when it

dismissed Elizabeth's breach of contract claim on summary judgment.

E.    MAY 2022 MOTION IN LIMINE AND PROMISSORY ESTOPPEL

Elizabeth argues the superior court erred in a pre-trial evidentiary ruling that precluded

"the testimonial statements and admissions of Ruth relating to her promise to devise" based on the

Statute of Frauds because her claim of promissory estoppel is an exception to the Statute of Frauds.

2nd Amend. Br. of Appellant at 37-38. We disagree.

1.    Legal Principles

We review evidentiary rulings for abuse of discretion. *Bengtsson v. Sunnyworld Int'l, Inc.*,

14 Wn. App. 2d 91, 99, 469 P.3d 339 (2020). A trial court abuses its discretion when its decision

is based upon untenable grounds or manifestly unreasonable. *Id.*

Generally, any contract for services not performed within one year must be in writing.

*Greaves v. Med. Imaging Sys., Inc.*, 124 Wn.2d 389, 396, 879 P.2d 276 (1994). The Washington

Statute of Frauds is codified at RCW 19.36.010 and states in relevant part:

> In the following cases, specified in this section, any agreement, contract, and promise shall be void, unless such agreement, contract, or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him or her lawfully authorized, that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof.

The Statute of Frauds is strictly construed. *Greaves*, 124 Wn.2d at 397.

Promissory estoppel "requires (1) a promise (2) where the promisor reasonably expected to cause the promisee to change his position, (3) which in fact did cause the promisee to change his position (4) by justifiably relying on the promise in such a manner (5) that injustice can be avoided only by enforcement of the promise." *Sloma v. Dep't of Ret. Sys.*, 12 Wn. App. 2d 602, 622, 459 P.3d 396, *review denied*, 195 Wn.2d 1028 (2020); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981). The promise must be clear and definite. *Sloma*, 12 Wn. App. 2d at 622. A second theory of promissory estoppel, *Restatement (Second) of Contracts* §139 (1981),[19] challenges the formal writing requirement of the Statute of Frauds. RESTATEMENT (SECOND) OF CONTRACTS § 139 (1981). However, Washington courts have declined to adopt this theory. *Greaves*, 124 Wn.2d at 401.

Equitable estoppel is based on "representation of existing or past facts." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 258-59, 616 P.2d 644 (1980). "'Equitable estoppel prevents a party from taking a position inconsistent with a previous one where inequitable consequences would result to a party who has justifiably and in good faith relied thereon.'" *Sloma*,

---

[19] *Restatement (Second) of Contracts* §139(1) (1981) states: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires."

12 Wn. App. 2d at 621 (quoting *Byrd v. Pierce County*, 5 Wn. App. 2d 249, 258, 425 P.3d 948 (2018)). However, equitable estoppel is not a cause of action; rather, it is used as a "'shield'" or defense. *Id.* (quoting *Klinke*, 94 Wn.2d at 259)

2.     Promissory Estoppel

Elizabeth argues that the superior court's ruling precluding "Ruth's testimonial statements and admissions of her promise to devise" for her promissory estoppel claim was an abuse of discretion. 2nd Amend. Br. of Appellant at 43. Even assuming the superior court erred in its evidentiary ruling regarding Ruth's testimonial statements, Elizabeth's promissory estoppel claim is subject to the Statute of Frauds, and under the Statute of Frauds, the claim is barred.

Here, to the extent that Ruth promised or agreed that Elizabeth would inherit 50% of the Renata Lane Property in exchange for Elizabeth's improvements to the property—notwithstanding the lack of evidence of a will contract discussed above—the agreement exceeded one year. Based on Elizabeth's complaint, the promise or agreement began in 2000, when Shawn and Elizabeth quitclaimed the Renata Lane Property to Robert and Ruth. The record shows that this understanding was never formalized in writing. In fact, Elizabeth admitted in her deposition that "it was a verbal promise." CP at 698. Therefore, the promise or agreement falls squarely within the Statute of Frauds, making any promises from Ruth void. RCW 19.36.010(1).

Elizabeth's own statements do not show that she can overcome the Statute of Frauds. Elizabeth argues that Ruth "implicitly or explicitly" promised to put the agreement in writing, i.e., her will, which provides an exception to the Statute of Frauds. 2nd Amend. Br. of Appellant at 41; *see Greaves*, 124 Wn.2d at 400. However, this argument is unpersuasive. The most Ruth ever

said or implied was that Shawn and Elizabeth would be in her will. The record does not show a promise on Ruth's part to put the exact terms that Elizabeth contends into a formalized writing.

Because any oral promise or agreement Ruth made is subject to the Statute of Frauds, any such promise or agreement is void. RCW 19.36.010. Accordingly, Elizabeth cannot meet the first element of promissory estoppel. Therefore, the superior court did not err in dismissing Elizabeth's promissory estoppel claim on summary judgment.

F.      FINAL MOTION FOR SUMMARY JUDGMENT

Elizabeth argues that the superior court erred when it dismissed her claim of tortious interference against Shawn on summary judgment. Additionally, Elizabeth argues that an order quieting title is inappropriate on summary judgment, particularly when there are disputed facts as to whether Elizabeth retains an interest in the Renata Lane Property. We disagree.

1.      Tortious Interference

a.      Legal principles

Tortious interference with contract or business expectancy has five elements: "'(1) existence of a valid contractual relationship or business expectancy, (2) defendants had knowledge of that relationship, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, (4) defendants interfered for an improper purpose or used improper means, and (5) resultant damage.'" *In re Estate of Lowe*, 191 Wn. App. 216, 237, 361 P.3d 789 (2015) (quoting *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 760-61, 320 P.3d 77 (2013), *review denied*, 180 Wn.2d 1026 (2014)), *review denied*, 185 Wn.2d 1019 (2016). A plaintiff must prove all five elements. *Greensun Grp.*, 7 Wn. App. 2d at 767-68.

A valid business expectancy "includes any prospective contractual or business relationship that would be of pecuniary value." *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 158, 52 P.3d 30 (2002), *review granted and case dismissed*, 148 Wn.2d 1021 (2003). A defendant must know of the plaintiff's business expectancy. *Greensun Grp.*, 7 Wn. App. 2d at 770-71. A defendant intentionally interferes if he or she knows with substantial certainty that their action will interfere in the plaintiff's business expectancy. *Id.* at 772.

Tortious interference can be established "by demonstrating the defendant acted with improper motive, improper means, or both." *Id.* at 773. A defendant acts improperly if he or she had a duty not to interfere. *Id.* Duty may be established by "statute, regulation, recognized common law, or established standard of trade or profession." *Id.*

Tortious interference with expected *inheritance* is nearly identical to tortious interference with business expectancy, only the interference is with the anticipated inheritance. *See Grange Ins. Ass'n*, 179 Wn. App. at 760. This tort is not recognized in Washington. *Estate of Lowe*, 191 Wn. App. at 236; *Grange Ins. Ass'n*, 179 Wn. App. at 760. To the extent that other jurisdictions have accepted tortious interference with expected inheritance, such claims may only be brought when no other remedies, such as a will contest, exist. *See, e.g.*, *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1052, 141 Cal. Rptr. 3d 142 (2012).

      b.     No tortious interference

Elizabeth argues that Shawn, as Ruth's primary caregiver, had a "quasi-fiduciary" relationship with Ruth, and in violation of that relationship, interfered with Elizabeth's business expectancy, i.e., her expectation of inheriting 50% of the Renata Lane Property, by "improper means" or with "improper purpose." 2nd Amend. Br. of Appellant at 49. The Parmans argue that

the superior court did not err in dismissing Elizabeth's tortious interference claim because the claim is actually a tortious interference *with inheritance* claim, a tort not recognized in Washington, and is a disguised will contest. We agree with the Parmans.

As a threshold matter, we question whether Elizabeth truly had a *business* relationship of pecuniary value with Ruth. *See Newton Ins. Agency & Brokerage, Inc.*, 114 Wn. App. at 158. Based the record, while there is passing mention of Elizabeth boarding horses and being "in the horse breeding business," it is not clear that boarding or breeding horses was her primary business endeavor, let alone a business endeavor with Ruth. CP at 353. In fact, the record suggests that Elizabeth's income came through other employment. Therefore, it appears that Elizabeth's expectation was truly one of inheritance and her claim against Shawn is tortious interference with inheritance expectancy. Washington does not recognize the claim of tortious interference with expected inheritance. *Grange Ins. Ass'n*, 179 Wn. App. at 760.

Even if Washington did recognize a cause of action for tortious interference with expected inheritance, there is no evidence in the record that Shawn improperly induced Ruth to change her will. Elizabeth points to statements made by her sons, such as "I had no doubt . . . that my grandmother was coerced and intimidated by my father to change her will," as evidencing Shawn's improper interference. CP at 1931. However, such statements were not supported by anything other than the sons' speculation. Conclusory statements and speculation are insufficient to defeat summary judgment. *Mason*, 19 Wn. App. 2d at 820; *Hamblin*, 23 Wn. App. 2d at 831. Furthermore, the record shows that Shawn tried to convince Ruth *not* to change her will. Nevertheless, Elizabeth's claim is not recognized in Washington; therefore, we hold that the superior court did not err in dismissing her tortious interference claim on summary judgment.

2.      Quiet Title

Elizabeth argues that the superior court erred when it granted summary judgment and quieted title to the Renata Lane Property favor of Shawn.[20] We disagree.

Here, Elizabeth and Shawn quitclaimed their entire interest in the Renata Lane Property to Robert and Ruth in March 2000. Shawn and Elizabeth did not list the Renata Lane Property as an asset when they filed for bankruptcy in 2001. Shawn and Elizabeth did not list the Renata Lane Property as an asset in their divorce decree. Nothing in the record shows any transfer of title in the Renata Lane Property back to Elizabeth after the 2000 quitclaim deed.

Elizabeth contends that she has an equitable interest in the Renata Lane Property via her unjust enrichment claim, which creates an equitable lien, and an equitable lien is her "'interest'" in the title. 2nd Amend. Br. of Appellant at 52. This argument is unpersuasive. A party to a quiet title action must succeed on the strength of his or her own title. *Byrd*, 5 Wn. App. 2d at 266. Again, Elizabeth has no title interest in the Renata Lane Property. Therefore, Elizabeth has not shown any basis for an ongoing quiet title action. Because Elizabeth has no title interest in the Renata Lane Property after 2000, we hold that the superior court did not err in quieting title on summary judgment in favor of Shawn.

---

[20] Elizabeth also argues that the 2000 quitclaim deed is invalid. But Elizabeth fails to provide any meaningful argument as to why the quitclaim deed was invalid; she only asserts that the quitclaim deed should not be considered because it was procured by "misrepresentation and deceit." 2nd Amend. Br. of Appellant at 54. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014).

G.     ATTORNEY FEES UNDER RCW 11.96A.150

Elizabeth argues that the superior court erred in awarding the Parmans their attorney fees under RCW 11.96A.150. Specifically, Elizabeth asserts that this proceeding is governed by Title 4 and not Title 11. We agree with the Parmans that RCW 11.96A.150 applies to this action; however, in light of our reversal of the superior court's summary judgment dismissal of Elizabeth's pre-2015 unjust enrichment claims, we vacate the attorney fees award and remand to the superior court to determine attorney fees at the conclusion of the matter.

1.     Legal Principles

RCW 11.96A.150 gives courts broad discretion to award attorney fees for any proceedings under Title 11. *Sloans v. Berry*, 189 Wn. App. 368, 379, 358 P.3d 426 (2015). RCW 11.96A.150 states:

> (1) Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

Additionally, courts may award attorney fees under RCW 11.96A.150 in ordinary civil suits if the proceeding affects the administration of an estate. *Laue v. Estate of Elder*, 106 Wn. App. 699, 713, 25 P.3d 1032 (2001), *review denied*, 145 Wn.2d 1036 (2002); *see Sloans*, 189 Wn. App. at 374-75; RCW 11.40.110. Substituting an estate into an ongoing action affects the administration of the estate. *Laue*, 106 Wn. App. at 713.

Furthermore, if a person wishes to pursue a creditor's claim against an estate that is rejected, that person must bring an ordinary civil suit, separate from probate proceedings. *Sloans*, 189 Wn. App. at 374; RCW 11.40.100. If the person prevails, a judgment in the civil suit establishes the amount of judgment as to the creditor's claim. RCW 11.40.120.

We review fees awarded under RCW 11.96A.150 for abuse of discretion. *In re Estate of Evans*, 181 Wn. App. 436, 451, 326 P.3d 755 (2014).

2.     No Abuse of Discretion

Here, when Shawn probated Ruth's estate, Elizabeth filed a creditor's claim under RCW 11.40.070(1). In the creditor's claim, Elizabeth sought to recover "capital contributions to, and her share of the profit from, the joint venture/partnership," amounting to $375,000. CP at 2393. Elizabeth additionally listed as a basis for her creditor's claim that Ruth's estate was "unjustly enriched" and that "[f]urther facts and circumstances are set forth in claimant's complaint and answer to counterclaims in the case of *Parman v. Parman*, Thurston County Superior Court cause #18-2-03269-34," the action now on appeal before this court. CP at 2394. The Estate rejected Elizabeth's claim. Furthermore, the Estate was substituted in the current action.

Even though the current action was not filed under Title 11, and even though it was filed prior to Ruth's death, the fact that Elizabeth filed a creditor's claim against the Estate, and tied that claim to the current action, brings this proceeding within the purview of Title 11. *See Sloans*, 189 Wn. App. at 374; RCW 11.40.100. Functionally, had Elizabeth prevailed on her claims, a judgment here in the civil suit would have established the amount of judgment she was owed, which could then be enforced under the probate code. RCW 11.40.120. Independent of this basis for an award of attorney fees, courts may award attorney fees under RCW 11.96A.150 in ordinary

civil suits if the proceeding affects the administration of an estate, and substituting an estate as a party affects its administration. *Laue*, 106 Wn. App. at 713. Elizabeth substituted Ruth's estate in the instant civil suit. Therefore, we hold that the superior court did not err when it determined that fees could be awarded under RCW 11.96A.150. However, as previously stated, we vacate the attorney fees award based on our reversal of the dismissal of Elizabeth's pre-2015 unjust enrichment claims and remand to the superior court to determine attorney fees at the conclusion of the matter.

H.     FINDINGS OF FACT

Elizabeth challenges several findings of fact from (1) the "Order and Judgment Awarding Attorney Fees" under CR 37(a)(4); (2) the "Order Granting Motion to Seal"; and (3) the "Order Denying Motion to Compel." Elizabeth's challenges to the trial court's findings fail.

We review a superior court's findings of fact for substantial evidence. *Shelcon Constr. Grp., LLC v. Haymond*, 187 Wn. App. 878, 889, 351 P.3d 895 (2015).

1.     Findings from Order and Judgment Awarding Attorney Fees under CR 37(a)(4)

a.     Paragraph 1

Paragraph 1 states in a part: "Elizabeth . . . filed a document improperly obtained from a confidential attorney file of the decedent, Robert Parman." CP at 1443. Elizabeth argues "no statute, court rule, ethical rule or other authority applies" to support the finding that Robert's will copy was improperly obtained. 2nd Amend. Br. of Appellant at 70. Whether Robert's will copy was improperly obtained, i.e., whether Young represented he was an attorney for Robert's estate, comes down to a credibility determination. We do not reweigh credibility determinations made by the superior court. *Mangan v. Lamar*, 18 Wn. App. 2d 93, 95, 496 P.3d 1213 (2021).

Elizabeth also claims that Robert's will copy was not in a confidential attorney file and instead in a safe. Whether a document is in a safe is not mutually exclusive from also being part of a confidential client file. Further, the record shows that the will copy did come from a confidential client file held by Althauser Rayan & Abbarno. Therefore, because there is substantial evidence that the will copy came from a confidential client file, the superior court did not err in its finding.

    b.  Paragraph 3

Paragraph 3 states: "Then, in this case, Elizabeth filed a motion to compel the document's production (which also sought the entire confidential attorney file of Robert Parman)." CP at 1444. The record shows that Elizabeth filed a motion to compel a copy of Robert's will, along with his entire client file. Therefore, there is substantial evidence in the record to support the superior court's finding.

    c.  Paragraph 4

Elizabeth assigns error to the portion of the paragraph 4 that states that Robert's will was improperly obtained and argues that it is a disguised conclusion of law. Elizabeth's objection to paragraph 4 is a reiteration of her objection to paragraph 1, which we reject.

    d.  Paragraph 5

Paragraph 5 states: "This Court also denied the motion to compel, finding no basis to compel production of the document (which [Elizabeth] already possessed, albeit improperly), and no basis to compel production of anything else from the file." CP at 1444. Elizabeth objects to this finding insofar as it is disguised as a conclusion that there was no basis to compel production of Robert's will.

Paragraph 5 merely states that the superior court denied Elizabeth's motion to compel because it found no basis to compel production of Robert's will. Accordingly, it is not a disguised conclusion of law. And the record contains the superior court's order denying Elizabeth's motion to compel. Therefore, substantial evidence supports the finding in paragraph 5.

e.  Paragraph 6

Paragraph 6 states: "Here, if [Elizabeth]'s counsel did not know that the document came from a confidential file, having solicited it directly from Robert Parman's former attorneys (or his former attorneys' successor firm), he certainly knew on January 10, 2022, when Shawn Parman filed his motion to strike/seal in both cases." CP at 1444. Elizabeth argues this finding is erroneous because "because all [Elizabeth]'s counsel could know on that date was that Shawn <u>claimed</u> that his father's will came from a file alleged to be a confidential file. The will was actually in a safe and any privilege had been waived." 2nd Amend. Br. of Appellant at 71-72 (underlining in original).

As stated above, whether a document is in a safe is not mutually exclusive from also being part of a confidential client file, and the record shows that the will copy did come from a confidential client file held by Althauser Rayan & Abbarno.

f.  Paragraph 7

Paragraph 7 states: "Rather than return, sequester or destroy the document (CR 26(b)(6)), [Elizabeth] filed it two more times in [the] *Estate of Robert Parman* case, and also in this case, and also filed her motion to compel the document's production." CP at 1444.

The primary thrust of this finding, and to which Elizabeth does not appear to object, is the fact that Elizabeth filed a copy of Robert's will both in this case and in the *Estate of Robert Parman*

case multiple times. This fact is supported by substantial evidence in the record. Elizabeth also filed a copy of the will *after* the Parmans and Althauser Rayan & Abbarno claimed it was from a confidential file and moved to strike and seal the document. Unchallenged findings of fact are verities on appeal. *Shelcon Constr. Grp.*, 187 Wn. App. at 889.

Also, even if the will copy was ultimately not privileged, upon being notified that it might be, Elizabeth should have returned, sequestered, or destroyed the will copy and not used it until the claim was resolved. CR 26(b)(6). The record shows that Elizabeth did not do so.

### 2. Findings from Order Granting Motion to Seal

#### a. Paragraph 12

Paragraph 12 states: "The Court need not make, and does not make, any credibility determinations or resolve the differences between the statements [of the parties], because even under Mr. Young's version of events, his actions do not constitute a lawful way for him to obtain any document from the attorney file of Robert Parman." CP at 1085.

Elizabeth argues that paragraph 12 is erroneous because "there is no law, court rule, ethical principle or other legal authority which renders unlawful any of Young's actions to obtain a copy of Robert Parman's will." 2nd Amend. Br. of Appellant at 72. This challenge is the same as the challenge raised in the challenge to Paragraph 1, discussed in section H.1.a. above. For the reasons stated above, we hold that the superior court did not err.

#### b. Paragraph 13

Paragraph 13 states: "The interest at stake in Defendant's motion to seal/strike is the client-attorney relationship between a decedent and his former attorneys, Rules of Professional Conduct 1.6." CP at 1085. The record shows that Turner was the estate planning attorney for Robert and

Ruth. The record also shows that Turner retired and sold his practice to Althauser Rayan & Abbarno, and that Althauser Rayan & Abbarno retained Turner's client files. Client confidentiality continues after the termination of an attorney-client relationship. RPC 1.9; RPC 1.6 cmt. 20. Therefore, an interest exists as stated in paragraph 13.

  c.  Paragraph 14

Paragraph 14 states: "Striking the document from the record and sealing it is the least restrictive means available to return Robert Parman's confidential file to status *quo ante*. To do otherwise would be to reward improper action." CP at 1085 (emphasis in original). Elizabeth argues this finding is actually a disguised conclusion of law and that the superior court abused its discretion in this conclusion.

Elizabeth is correct that this finding is a conclusion of law. Elizabeth's argument is addressed in the above analysis, section C.2, regarding her appeal of the motion to seal. For the reasons stated above, the superior court did not abuse its discretion.

  d.  Paragraph 16

Paragraph 16 states: "In this cause number, where [Robert's will] was proffered on reconsideration and after resolution of all the merits, the Court is comfortable concluding that the document had no colorable relevance to the issues for which it was raised." CP at 1086. Elizabeth argues that this finding is erroneous because it is a disguised conclusion of law and that Robert's will copy is actually relevant.

Insofar as this finding makes an evidentiary decision, Elizabeth is correct is this is a conclusion of law. Evidentiary rulings are reviewed for abuse of discretion. *Portmann*, 2 Wn. App. 2d at 463. Under ER 401, "relevant evidence" is "evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Here, as discussed above, neither Ruth's nor Robert's 2004 wills mention a promise or explicit agreement that Robert's and Ruth's wills are mutual wills that must be kept in effect. *See Portmann*, 2 Wn. App. 2d at 461-62; *Thompson*, 22 Wn. App. at 378. To the extent that Robert's will allegedly shows he made a promise to Elizabeth 20 years ago, it does not make the fact of a promise *Ruth* made to Elizabeth any more or less probable. Elizabeth's action here is against Ruth, or Ruth's estate. Therefore, the trial court did not abuse its discretion.

3. Findings from Order Denying Motion to Compel

Elizabeth assigns error to the following language in the superior court's order denying the motion to compel:

> [T]he file and materials subject to the subpoena is confidential client information subject to RPC 1.6. . . .
>
> . . . .
>
> . . . [B]ased on the materials reviewed and the argument presented, there is no justification to authorize the release of the confidential client file pursuant to court order as to do so would be rewarding improper behavior. . . .
> . . . [W]hether or not there was a misrepresentation made in obtaining a copy of the will, obtaining it in the manner in which it was obtained was not a lawful means of obtaining that document in an adversarial proceeding.

CP at 1088.

Elizabeth advances the same arguments as she does against paragraphs 12 and 14 in the Order Granting the Motion to Seal. For the reasons stated in sections H.2.a and .c above, we hold that the superior court did not err.

4.      Findings from Motion Granting Attorney Fees Under RCW 11.96A.150

Elizabeth assigns error to paragraphs 5 and 9 in the superior court's order awarding attorney fees under RCW 11.96A.150.  Elizabeth's assignments of error to paragraphs 5 and 9 are a reiteration of her arguments in her appeal of the order.  To that end, her arguments are addressed above, and we hold that the superior court did not err.

I.      LIS PENDENS CROSS-APPEAL

The Parmans cross-appeal the superior court's order denying the motion to cancel lis pendens dated October 2020.  The Parmans contend that the lis pendens that Elizabeth filed was procedurally defective and impermissibly interferes with the probate code.

1.      Legal Principles

A lis pendens is an instrument that has the effect of clouding title to real property.  RCW 4.28.328(1)(a).  Its purpose is to give notice to subsequent purchasers or encumbrancers of real property that there is an ongoing action affecting the property's title.  *See* RCW 4.28.320.  Once a lis pendens has been filed, "every person whose conveyance or encumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he or she were a party to the action."  RCW 4.28.320.

A court may, in its discretion, remove a lis pendens if three conditions are met: "(1) the action must be settled, discontinued, or abated, (2) an aggrieved person must move to cancel the lis pendens, and (3) the aggrieved person must show good cause and provide proper notice."  *Guest v. Lange*, 195 Wn. App. 330, 336, 381 P.3d 130 (2016), *review denied*, 187 Wn.2d 1011 (2017); RCW 4.28.320.  An action is settled, discontinued, or abated if there has been a final disposition

in the case. *Guest*, 195 Wn. App. at 337-38. In other words, actions on appeal are not "settled, discontinued, or abated." *See id.* at 338.

Because a lis pendens clouds title, an order to remove a lis pendens affects a substantial right. *Washington Dredging & Imp. Co. v. Kinnear*, 24 Wash. 405, 407, 64 P. 522 (1901). We review decisions to cancel a lis pendens for abuse of discretion. *Guest*, 195 Wn. App. at 335.

2.      Untimely Appeal

As a threshold matter, because the order denying the motion to cancel the lis pendens affects a substantial right, it is an appealable order. RAP 2.2(a)(3). Notices of appeal must be filed within 30 days of the superior court's entry of the order. RAP 5.2(a). The order denying the motion to cancel lis pendens that the Parmans appeal was entered two years ago in October 2020, well beyond the 30-day limit. Further, whether there is a lis pendens attached to the Renata Lane Property has no bearing on the orders on appeal before this court, so the cross-appeal does not fall within any timing exception. RAP 2.4(a). Therefore, we dismiss this cross-appeal as untimely.[21]

---

[21] We note the record contains a second and more recent order denying a motion to cancel lis pendens, dated November 18, 2022, that is not on appeal. After the appeal and cross-appeal were filed in this case, the Parmans moved to cancel the lis pendens again on the basis that the action was settled in light of the superior court's summary judgment ruling. At no point in their second motion to cancel the lis pendens do the Parmans argue that the lis pendens was procedurally defective or impermissibly interfered with the probate code, as they argue to this court.

As discussed above, RCW 4.28.320 has three conditions that must be met for a court, in its discretion, to cancel a lis pendens. *Guest*, 195 Wn. App. at 336. The Parmans do not address this standard in their cross-appeal. Even if we reached the merits of this cross-appeal, the Parmans' cross-appeal would fail because the action was not settled, discontinued, or abated in October 2020. RCW 4.28.320. Because our review is based on an abuse of discretion standard, the superior cannot be said to have abused its discretion in denying the motion to cancel the lis pendens in October 2020.

ATTORNEY FEES ON APPEAL

The Parmans request attorney fees pursuant to RAP 18.1 and RCW 11.96A.150. RAP 18.1(a) provides a party the "right to recover reasonable attorney fees or expenses on review" before this court, so long as the party requests the fees and "applicable law" grants the right to recover.

RCW 11.96A.150(1) states in pertinent part:

Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; . . . The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

Because we reverse the dismissal of Elizabeth's pre-2015 unjust enrichment claim, we deny the Parmans' request for attorney fees on appeal. Additionally, because we dismiss the Parmans' cross-appeal, we deny the Parmans' request for attorney fees as it relates to their cross-appeal.

CONCLUSION

We reverse the superior court's summary judgment dismissal of Elizabeth's pre-2015 unjust enrichment claim based on the statute of limitations and remand for further proceedings. We affirm all remaining orders on appeal. Finally, we dismiss the cross-appeal as untimely.

55

No. 57860-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, J.

Cruser, C.J.